485 A.2d 724

Theodore E. CLITES, Appellant,

v.

TOWNSHIP OF UPPER YODER, and Robert W. Hunt,
Supervisor, Eugene T. Glova, Supervisor, and C.T.
Madigan, Supervisor, Appellees.

Supreme Court of Pennsylvania.

Argued Sept. 13, 1984.

Decided Dec. 18, 1984.

William A. Weiler, Pittsburgh, for appellant.

William Eckel, Johnstown, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN,* Justice.

At issue in this appeal is the legality of the dismissal of appellant Theodore E. Clites from his position on the police force of Upper Yoder Township. We have concluded that there was a lack of substantial evidence to support appellant's dismissal and that appellant was denied a fair hearing prior to his dismissal.

Appellant served as Police Chief of Upper Yoder Township from October, 1974 until his removal from that position in October, 1981. On July 23, 1981, appellees Robert W. Hunt and Eugene T. Glova, and Laurence D. Eash, in their capacity as the Board of Supervisors of Upper Yoder Township, issued the following directive to appellant:[1]

> Effective immediately, you will work with Ass't Chief Hess in making available to him all police records, including all log books, past and present, and other similar

---

* This case was reassigned to this writer on October 29, 1984.

1. This directive was issued following action taken by the Board at its meeting on the preceding day:

> [Appellee Robert W.] Hunt moved that Chief Clites and Ass't Chief Hess work together in making arrangements wherein the Assistant Chief should have access to all records pertinent to police matters. [Appellee Eugene T.] Glova seconds. Carried on a 2–1 vote with [Laurence D.] Eash voting no as we are not allowing Chief to run police department.

items pertinent [sic] to the operation of the police department.

In response to this directive, appellant telephoned Audrey Atkinson, Secretary-Treasurer for Upper Yoder Township, the following day and told her "that all the log books are in the Township Building." In fact, Assistant Chief Hess did find all the log books from 1980 and 1981, and three log books from 1979.

On July 31, 1981 and October 23, 1981, the Board issued additional directives to appellant, instructing him to turn over to Assistant Chief Hess "*all* log books from the date you became Chief of Police through present."

On October 30, 1981, the following action took place at a special meeting of the Board:[2]

Mr. Hunt placed following motion on floor for Board's consideration:

That Theodore Clites be removed from the Police Department effective immediately. A written statement for the reasons of this action shall be furnished to Mr. Clites within five days of this date....

Motion seconded by C.T. Madigan—carried unanimously.

On November 3, 1981, a letter from the Board informed appellant that he was charged with violation of an official duty, inefficiency, neglect, intemperance, disobedience of orders and conduct unbecoming an officer, all based upon his failure to produce the requested log books for the years 1974 through most of 1979.[3] The letter concluded:

For the reasons stated herein, the Board of Supervisors has voted to remove you from the police force.

2. Appellee C.T. Madigan became a Supervisor of Upper Yoder Township on September 18, 1981, filling the position previously held by Laurence D. Eash.

3. Section 2 of the Police Tenure Act, Act of June 15, 1951, P.L. 586, as amended, 53 P.S. § 812, provides that

No person employed as a regular full time police officer ... shall be ... removed ... except for the following reasons: ... (2) neglect or violation of any official duty; ... (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; ...

Appellant requested a formal public hearing on the "charges" against him pursuant to § 4 of the Police Tenure Act, 53 P.S. § 814. At the hearing, it was stipulated that the missing log books "were disposed of by Chief Clites. Thrown away with trash." At the close of this hearing, the Board concluded that "[t]he destruction of the log books by Chief Clites is conduct unbecoming an officer, inefficiency, neglect, intemperance, disobedience of orders and violation of an official duty," and "affirm[ed its] motion of the 30th of October, 1981, removing Chief Clites from the Township of Upper Yoder Police Department."

Appellant appealed his dismissal to the Cambria County Court of Common Pleas and that court, after hearing additional testimony, modified the penalty imposed by appellees and ordered that appellant "be suspended for six (6) months" and "reinstated with reduction in rank to police officer." Exceptions were filed and the court of common pleas en banc sustained the exceptions, vacated the order of the court of common pleas, denied the appeal and upheld appellant's dismissal.[4] On appeal, the Commonwealth Court affirmed. *Clites v. Township of Upper Yoder,* 79 Pa.Commw. 28, 468 A.2d 878 (1983). We granted appellant's petition for allowance of appeal and we now reverse.

The Local Agency Law defines our standard of review in this case:

[T]he court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and neces-

4. The court of common pleas en banc held that it was error for the court of common pleas to hear additional testimony. *See* 2 Pa.C.S.A. § 754. Since neither party has ever appealed this aspect of the decision of the court of common pleas en banc, we have considered only the testimony from the original Board hearing in arriving at our decision today.

sary to support its adjudication is not supported by substantial evidence.

2 Pa.C.S.A. § 754(b). *See also Pookman v. School District of the Township of Upper St. Clair,* 506 Pa. 74 at 77, 483 A.2d 1371, at 1373 (1984) (1984) (plurality opinion).

Appellant first argues that his dismissal was not based upon substantial evidence because the evidence does not establish any of the types of misconduct which his actions were alleged to have constituted.

■ "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Republic Steel Corporation v. Workmen's Compensation Appeal Board,* 492 Pa. 1, 5, 421 A.2d 1060, 1062 (1980). *See also Gallagher v. Civil Service Commission of the City of Philadelphia,* 16 Pa.Commw. 279, 330 A.2d 287, 289 (1974). Our review of the record made before the Board convinces us that the evidence in this case was not adequate to support the conclusion that appellant's destruction of the log books for 1974 through most of 1979 constituted conduct unbecoming an officer, inefficiency, neglect, intemperance, disobedience of orders and violation of an official duty.

At the hearing, the only evidence produced concerning the log books was the testimony of Assistant Chief Hess. He testified that a log book is a "daily account of all the activities of the Upper Yoder Township Police Department. It has the date of any call that we might receive through the Richland Police Central, the time the call was received, what time we arrived on the scene, the time we cleared from the call, who called, what the nature of the complaint entailed, and also what action was taken by the Police Department, and also the Officer that was assigned to that particular incident"; that the log books are "in the Police Office, on a clip board, to the corresponding car or Police Department vehicle, he might use on a tour of duty. When he comes out to work, the particular unit or police vehicle that he would be using, he would also use that log book assigned to that vehicle"; that no copies of original entries

in the log books are made; that the log book is really "pretty much" like a time sheet or diary of an officer's eight hour tour of duty; that records separate from the log books are kept when arrests are made; that the log books are filed in the police office after they are filled up; that the log books could be used to show patterns or frequencies of particular types of incidents; and that there has not been even "one specific problem, no matter how trivial or insignificant" caused by appellant's destruction of the old log books.

 A police officer may not be disciplined for violation of an official duty unless there is an established legal duty which has been violated. *See County Auditors of McKean County v. Anderson,* 133 Pa.Super. 475, 3 A.2d 28, 30 (1938) ("Service not required by the law cannot be classed as official duties.") In this case, there was no evidence presented at the hearing which would even suggest, much less prove, that appellant had an official duty to keep any log books for any particular length of time; there was no evidence of any policy regarding the retention of the completed log books; and there was no evidence that the books were ever actually used at any time or for any purpose after they were completed. Rather, there was simply a casual practice or tradition of filing the completed books in the police office. Further, the evidence concerning the nature of the log books was not such as to imply a duty to keep them for future use.[5] The evidence revealed that the log books were in the nature of diaries, used to provide a continuity between shifts of police officers and to account for an officer's time during his tour of duty; there was no evidence that the books contained any information that was essential to the legal recordkeeping requirements of a police department, and in fact, the evidence revealed that separate records were kept for arrests. Accordingly, we conclude

5. For this reason, we think the Board also erred in concluding that appellant's destruction of the old log books constituted a violation of 18 Pa.C.S.A. § 4911.

that there was not substantial evidence to support the Board's finding that appellant had violated an official duty.

In addition, the record in this case failed to support a finding of neglect. Neglect means leaving things "undone or unattended to especially through carelessness." Webster's New Collegiate Dictionary (1977). In this case, the evidence failed to show that appellant's destruction of the old log books constituted neglect of some duty; appellant had no duty with respect to keeping old log books. To the contrary, in view of the failure of the record to establish that the old log books retained any importance, we think appellant was particularly careful in performing his job because he nevertheless kept the completed log books from all of 1980 and 1981 and the end of 1979.

The evidence in this case also failed to support a finding of inefficiency. At the hearing, Assistant Chief Hess was unable to identify a single problem that had arisen as the result of appellant's destruction of the old log books.

■ Nor did the evidence support a finding of disobedience of orders. In order for disobedience of orders to constitute the basis for disciplining a police officer, the orders which have been disobeyed must be reasonable and must be reasonably related to the operation of the police department and the function of the officer in that department. This element of reasonableness is required in order to insulate police officers from the unreasonable requests of their supervisors, which may be made simply to harass the officer or as a pretext for disciplinary action when the requests are not complied with.[6] In this case, although it is clear that appellant failed to comply with the Board's order to turn over the log books from 1974 through most of 1979, because there was no evidence that those old log books had any reasonable relation to the efficient operation of the

6. Appellant's counsel stated the position at the hearing as follows: [L]et's assume for the sake of discussion, that there was an order from the Supervisors that Chief Clites turn over the 1978 phone book that had been issued to him. And he said "I threw it out". Would they then fire him because he threw out the 1978 phone book?

police department or to appellant's function within that department, there was not substantial evidence to show that appellant had disobeyed an order which could give rise to disciplinary action.

Further, the record lacked substantial evidence to indicate that appellant had engaged in conduct unbecoming an officer.

Unbecoming conduct on the part of a municipal employee, especially a policeman or fireman, is any conduct which adversely affects the morale or efficiency of the bureau to which he is assigned. It is indispensable to good government that a certain amount of discipline be maintained in the public service. Unbecoming conduct is also any conduct which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services.

*In re Appeal of Zeber*, 398 Pa. 35, 43, 156 A.2d 821, 825 (1959). There was no evidence in this case to indicate that the morale or efficiency of the police department had suffered as a result of appellant's destruction of the old log books, nor was there evidence that appellant's conduct had destroyed public respect for or confidence in the police department.

Finally, there was no evidence that appellant's destruction of the old log books constituted intemperance. Intemperance means a "lack of moderation." Webster's New Collegiate Dictionary (1977). There was no evidence to show that appellant exhibited a lack of moderation when he disposed of old log books which he had no duty to keep and whose destruction has never caused any hardship to Upper Yoder Township.

■ Since the Board's findings of fact were not supported by substantial evidence, neither they nor the discipline based upon them may stand.

■ Additionally, in this case, the record reveals that appellant had filed criminal charges against Supervisor Glova, and that Mr. Glova had been admitted to the ARD

program in connection with those charges.[7] In view of this prosecutor/defendant relationship between appellant and Supervisor Glova, we hold that the probability of actual bias on the part of Supervisor Glova rendered his participation in the hearing and decision of this matter constitutionally impermissible.

Accordingly, the order of the Commonwealth Court is reversed and appellant is reinstated to his former position as Police Chief of Upper Yoder Township, with back pay and benefits.

HUTCHINSON, J., filed a concurring opinion.

FLAHERTY, J., filed a dissenting opinion in which ZAPPALA, J., joined.

HUTCHINSON, Justice, concurring.

I agree that the record does not show sufficient evidence of wrongdoing within the meaning of Section 2 of the Police Tenure Act, 53 P.S. § 812, to support appellant's discharge. Therefore, I concur in the result reached by the majority. However, because the case has been properly decided on the sufficiency of the evidence issue, I believe it is unnecessary to consider the propriety of Supervisor Glova's participation both in the hearing on the charges against appellant and in the Board of Supervisors' ultimate decision to dismiss him.

FLAHERTY, Justice, dissenting.

I dissent and would affirm the order of Commonwealth Court which upheld the dismissal of Chief Clites.

Appellant, Theodore E. Clites, was the chief of police for Upper Yoder Township, a township of the second class,

7. At the commencement of appellant's hearing, his counsel stated:
I direct a request to Supervisor Glova, that he give special consideration to recusing himself from sitting in judgment on Mr. Clites, because as you may or may not know, Mr. Glova recently admitted in Court, his guilt concerning certain criminal charges filed against him by Chief Clites. And that I would think, so that any spectre of vindictiveness or any other feelings which he might have be removed, and he should in the interest of justice and fair play, remove himself from any deliberations of this proceedings.

from October 1974 until his discharge on October 30, 1981, for destruction of police log books. Those log books were kept in patrol cars and contained entries regarding all of the official activities involving the car for each shift, including date and time the officer entered the car, time calls were received and cleared, nature of calls and names of complainants, and time officer's shift ended. As the majority notes, the information contained in the log books could be useful indicia of patterns or frequencies of particular types of incidents or disturbances within the township. The log books were apparently also the sole source of data regarding the use of patrol cars—expensive township equipment. No duplicates of the information contained in the log books existed. It is true the records were *made* for departmental control by Upper Yoder Township's police chief and supervisors, and not because their making was mandated by statute, local ordinance or rule. Nevertheless, once made, in my view, the records became government records whose manner of disposal was regulated by statute.

The Act of May 9, 1949, P.L. 908, No. 250, deals specifically with the manner of record keeping in townships. Section 6 of that Act provides in relevant part: "Records which have been reproduced or copied in accordance with section one of this act or other records which are deemed valueless may be destroyed or otherwise disposed of, subject to the approval of the court of common pleas of the proper county." 65 P.S. § 63.6 (1959). Likewise, Section 6 of the Municipal Records Act, Act of January 18, 1968, P.L. (1967) 961, which provides for the destruction of records in, *inter alia,* townships of the second class, provides, "[E]ach individual act of disposition shall be approved by resolution of the governing body of the municipality." 53 P.S. § 9006 (1972). *Compare,* 16 P.S. § 13004, which provides for disposition of records in counties of the second through eighth classes subject to certification of Pennsylvania Historical and Museum Commission; The Administrative Code of 1929, 71 P.S. § 204 (1962) providing for disposition of records of state level departments and agencies subject to

approval of the Executive Board and the Pennsylvania Historical and Museum Commission; and 42 Pa.C.S.A. § 4321 and § 4322 (1981) governing disposition of court records. Whether Upper Yoder Township declared its intent to follow schedules promulgated pursuant to the Municipal Records Act does not appear of record. Regardless of which statute applies, however, it is clear that no records of the township could properly be discarded on the unilateral act of a single person. Clites admitted discarding the records without approval of any reviewing agency, and, in my view, this evidence supports the charge of neglect or violation of an official duty, i.e. the duty to preserve the records pending permission to destroy them from the appropriate reviewing body.

Clites' argument that no statute, ordinance or rule mandated creation of the log books is, in my view, unavailing; the records were made, and once made, their disposal was subject to the approval of either the court of common pleas or the township supervisors. Unfortunately, Clites did not secure such approval. Neither did the availability of the information from other sources relieve Clites of the duty to seek approval before these original records were discarded. *See,* 63 P.S. 63.6, supra; 53 P.S. § 9008 (1972).

I fully agree with the majority's conclusion that the Board's reliance on the criminal statute, 18 Pa.C.S.A. § 4911 as justification for Chief Clites' removal was misplaced, but I cannot espouse the majority's rationale. That section provides that a person commits an offense if he intentionally and unlawfully destroys the availability of any record belonging to or received or kept by the government for information or record. The majority states the log books fall outside the purview of § 4911 because their nature did not imply future use. Unless the books were kept for sentimental reasons, it is difficult to imagine what purpose other than future use was intended when the log book system was implemented. In fact, there was testimony in the Court of Common Pleas that the log books were to be used in an audit. In my view, in the absence of a

conviction, there can be no reliance on a violation of the criminal statute as justification for Chief Clites' dismissal.

Neither can I agree that Chief Clites has been denied due process of law, either as he alleges on grounds of improper commingling of adjudicative, prosecutive and investigative functions or on grounds of bias. It is not uncommon for administrative agencies to fulfill both the prosecutive and judicial functions, and the United States Supreme Court has declared there is no *per se* denial of due process where an agency adjudicates a matter at its own contested hearing on charges evolving from its own investigation. *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). That court wrote:

> It is not surprising ... to find that "[t]he case law, both federal and state, generally rejects the idea that the combination [of] judging [and] investigating functions is a denial of due process...." 2 K. Davis, Administrative Law Treatise § 13.02, p 175 (1958). Similarly, our cases, although they reflect the substance of the problem, offer no support for the bald proposition applied in this case by the District Court that agency members who participate in an investigation are disqualified from adjudicating. The incredible variety of administrative mechanisms in this country will not yield to any single organizing principle.
>
> . . . . .
>
> [T]he mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing. Without a showing to the contrary, state administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' *United States v. Morgan*, 313 US 409, 421, 85 L.Ed 1429, 61 S.Ct. 999 (1941).

*Id.* 421 U.S. at 52–55; 95 S.Ct. at 1467–69, 43 L.Ed.2d at 726–728.

The township supervisors are statutorily charged with the ultimate responsibility for general supervision of township affairs, 53 P.S. § 65510 (1984–1985), including operation of the police force, and this function is non-delegable. The chief of police is employed by the supervisors and reports directly to them. Inherent in the nature of this employer-employee relationship is the near certainty that the need for disciplinary action will arise. Section 4 of the police tenure act expressly requires the township supervisors, as the appointing authority, to adjudicate the propriety of its own action preferring charges if the police chief demands a hearing on the charges, 53 P.S. § 814 (1974). The General Assembly has propounded a reasonable mechanism for governmental operations and employee supervision and there is no authority for the supervisors to delegate either the responsibility to oversee the operation of the police force or the power to adjudicate the necessity or propriety of disciplinary measures. *Delegatus non potest delegare.*[1] All that can be required is that the supervisors make their adjudication fairly on the basis of the evidence presented at the § 814 hearing where such a hearing is requested.

Chief Clites was employed by and reported directly to the township supervisors. The supervisors, for whatever reason, requested all the records regarding the operation of the police force, which they had a right to do. When the requested records were not produced, the township supervisors apparently assumed Chief Clites had violated a directive and, on this basis, they concluded there was insubordination justifying his removal. Clites then demanded a public hearing, as was his right, 53 P.S. § 814. At that

[1] The instant case is clearly distinguishable from *Dussia v. Barger,* 466 Pa. 152, 351 A.2d 667 (1976). There we invalidated a state police field regulatory scheme which vested the Commissioner with sole discretion to investigate whether a purely advisory panel should be convened to investigate state troopers and make recommendations whether court-martial proceedings should be initiated where the Commissioner, as head of an administrative hierarchy, also had authority to determine guilt or innocence and impose sanctions. Here the township board of supervisors, a duly elected governing body, has a non-delegable duty to oversee all the operations of the township, including the duty to monitor and, if need be, discipline employees.

hearing, Clites was represented by counsel, the township solicitor acted as prosecutor and a third attorney presided over the hearing to guard against possible procedural defects. The parties stipulated that the records had been destroyed. On this evidence, the supervisors decided to remove Clites for unauthorized destruction of government property, which they believed to be illegal. What constitutes due process depends on what process is due under the particular circumstances of each case. The procedures employed in this case were entirely in order, and Clites' argument that the supervisors improperly commingled investigative, prosecutive and adjudicative functions is meritless. Any holding to the contrary would deprive the supervisors of their inherent supervisory powers. We should not "second guess" those elected to fulfill this responsibility. The majority view, taken to its extreme, would work to nullify the inherent powers of supervision in the elected supervisors, which surely include investigating and calling into question the activities of the township's police employees.

On appeal, the Court of Common Pleas took additional testimony, and, thus, made a *de novo* factual determination. Based on this additional testimony, the Court affirmed the Board's conclusion that Clites improperly destroyed the log books on his own initiative. If as the majority suggests, the supervisors had in fact prejudged Clites' case, the *de novo* proceedings in Common Pleas Court effectively cured any prejudice.

I cannot agree that bias on the part of one of the supervisors tainted the proceeding before the Board. Clites had initiated criminal charges against one of the supervisors, which culminated in disposition under the Accelerated Rehabilitative Disposition program. That supervisor testified in the *de novo* proceeding before Judge Creany that he was not biased, and Judge Creany, who was in a position to observe the demeanor of the witness and evaluate his credibility, held the proceeding before the Board was proper. Furthermore, it is noteworthy that all three supervisors joined in the order dismissing Clites as chief of police.

Clites' case is clearly distinguishable from *Gardner v. Repasky*, 434 Pa. 126, 252 A.2d 704 (1969) where the complainant cast the deciding vote for removal (2–1) and there was no *de novo* proceeding in the Court of Common Pleas, and we suggested the protection of due process was denied. I cannot agree that the conclusion of the Board was the product of bias.

I would hold that conduct short of a criminal conviction may, nonetheless, constitute cause for removal of a police chief under 53 P.S. § 812. Although perhaps not amounting to inefficiency, intemperance, disobedience of orders, or conduct unbecoming an officer, in my view, destruction of township records without prior approval certainly constitutes neglect or violation of an official duty justifying removal of a police chief. I would affirm the order of Commonwealth Court.

ZAPPALA, J., joins this dissenting opinion.