J-A16033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| NATHANIEL WILLIAMS | : | No. 980 EDA 2021 |

Appeal from the Order Entered April 22, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0030428-2019

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:        **FILED NOVEMBER 03, 2022**

The Commonwealth appeals from the order denying their motion to refile charges against Nathaniel Williams. It argues it presented sufficient evidence to establish a *prima facie* case of unsworn falsification to authorities, tampering with or fabricating physical evidence, tampering with public records or information, and obstructing administration of law or other governmental functions.[1] We affirm.

In November 2019, the Commonwealth charged Nathaniel Williams, a former Philadelphia Police Detective, with the above-mentioned crimes, which related to allegations that Williams conducted searches of a citizen's license plate and provided the information he obtained from the searches to his

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 4904, 4910, 4911, and 5101.

cousin. In September 2020, the court held a preliminary hearing, where Theresa Williams[2] and Lieutenant James Clough testified.

Theresa testified that in October 2017 Edwin Williams[3] approached her in the parking lot of a Michaels craft store and asked for her phone number. N.T., 9/11/2020, at 6, 8. Theresa informed him she was not interested. She got in her car, and as she went to back-up, she saw Edwin pull his car behind hers and sit there. *Id.* at 8. Theresa "felt like he was doing something behind [her] car." *Id.* Theresa testified that a week or two later, she heard a knock on the door to her home, and saw Edwin at her door. *Id.* at 9. When she opened the door she "asked him how the hell he found [her]." *Id.* at 10. He would not leave, so she had him write his phone number on a piece of paper. *Id.* She stated that a couple days later, she went to the SEPTA police department to file a report. *Id.* at 11. She testified she went to SEPTA because during one of their encounters Edwin had told her he worked for SEPTA. *Id.* at 9, 20, 22. She further testified that in the days following his appearance at Theresa's home, Edwin left roses and cards on her car. *Id.* at 14.

Lieutenant Clough, with the Internal Affairs Division of the Philadelphia Police Department, testified that he received Theresa's complaint and conducted an investigation. *Id.* at 57. He stated that the investigation

---

[2] Theresa and Nathaniel have the same last name but are not related. To avoid confusion, we will refer to Theresa Williams by her first name.

[3] Edwin and Nathaniel are cousins with the same last name. Again, to avoid confusion, we will refer to Edwin Williams by his first name.

revealed that on October 17, 2017, Williams ran a search for Theresa's license plate number through national and state databases – NCIC and PCIC[4] – and conducted a voter registration check. *Id.* at 58-57, 59. Lieutenant Clough also interviewed Williams. *Id.* at 77. The court ruled the Internal Affairs interview of Williams was inadmissible as a coerced statement, under *Garrity v. New Jersey*, 385 U.S. 493 (1967).[5]

Lieutenant Clough testified that after the interview, he proceeded to the homicide division unit and procured a homicide file needed in the investigation of Williams' searches regarding Theresa. *Id.* He collected one folder, which he reviewed and found no reference to Theresa. *Id.* at 78. He stated that the following day, Williams called and informed the Internal Affairs Division that there was a second folder for the homicide investigation. *Id.* Lieutenant Clough testified he retrieved that folder and when reviewing it found "several references to [Theresa] which included a Facebook photograph, a photograph of [Theresa] and her children that was printed from Facebook," and

---

[4] The NCIC is the national crime data base and the PCIC is the state crime data base. N.T., 4/22/2021, at 45.

[5] In *Garrity*, the United States Supreme Court held that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic." 385 U.S. at 500.

Here, the court at the first preliminary hearing found that *Garrity* was not an issue for a suppression hearing but that an interview inadmissible under *Garrity* could not be used, even at the preliminary hearing stage. N.T., 9/11/2020, at 38, 51.

handwritten notes on the back, with Theresa's name, "no record/no wants, 75-48A negative, no friends shared, autism supporter, the abbreviation for possibly, p-o-s-s and neighbors." *Id.* at 78-79. It also had Theresa's license plate number and some biographical information. *Id.* at 79. He stated the folder contained no other references to Theresa and for "[a] lot of the inquiries" made during the investigation and included in the file "there [were] copies, there [were] printouts of various license plates, tags, houses that were checked. And this was the only one, the only thing that was not printed out, it was just handwritten on the back of a Facebook page." *Id.* at 79-80. The Commonwealth did not admit any part of the homicide file into evidence.

The Commonwealth admitted into evidence phone records showing text messages between Williams and Edwin, and phone calls before and after Edwin's first encounter with Theresa. The material showed text messages from the day of the encounter, October 14, as well as October 15, and October 17, the day Williams conducted the NCIC and PCIC searches. *Id.* at 87-88. Further, on November 24, 2017, the day the police interviewed Edwin, Williams replaced his phone. *Id.* The Commonwealth did not have the actual content of the text messages. *Id.*

Following the preliminary hearing, the court discharged the case against Williams for lack of evidence. *Id.* at 89.

In September 2020, the Commonwealth filed a Notice of Refiling of Criminal Complaint, listing charges of tampering with public records,

obstruction of administration of law/other government function, unsworn falsification, tampering with/fabricating physical evidence.[6]

The court held a second preliminary hearing, which incorporated the testimony from the first hearing. N.T., 4/22/21, at 3. This time, the court allowed into evidence the transcript of Williams' internal affairs interview, and Lieutenant Clough read it into the record. During the interview, Williams stated that he ran Theresa's license plate in connection with a homicide investigation. He said he had seen a suspect in the homicide investigation get into a vehicle a few months before, and when he found what he believed was the vehicle the following day, he "ran that tag." *Id.* at 35. He did "[a]ll kinds of cross checks," as follow ups, including "car stops, 48-As, voters, real estate, criminal history, property ownership, and social media." *Id.* at 36.

Williams further stated that Edwin was his cousin and, when asked the last time he had last spoken with Edwin, he stated, "I am not sure; maybe a year or more." *Id.* Williams further said he did not disseminate information related to Theresa's license plate or other records to Edwin. *Id.* at 39-41. Lieutenant Clough testified that Williams signed each page of the interview. *Id.* at 29.

---

[6] The Notice also listed official oppression, but at the preliminary hearing, the Commonwealth conceded it did not have *prima facie* evidence for that crime. N.T., 4/22/2021, at 61.

The court found the Commonwealth failed to demonstrate the elements of the crimes by a preponderance of the evidence and denied the motion to re-file. *Id.* at 77. The Commonwealth filed a timely notice of appeal.

The Commonwealth raises the following issue:

> Did the [trial] court err in denying the Commonwealth's motion to refile the charges of unsworn falsification to authorities, tampering with or fabricating physical evidence, tampering with public records or information, and obstruction of the administration of law or other governmental function where the evidence, when viewed in the proper light and accepted as true, proved a *prima facie* case that [Williams] committed these crimes?

Commonwealth's Br. at 4.

Whether the Commonwealth presented sufficient evidence to establish a *prima facie* case is a question of law, which we review *de novo*. **Commonwealth v. Perez**, 249 A.3d 1092, 1102 (Pa. 2021). "The principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention." **Id.** (quoting **Commonwealth v. McBride**, 595 A.2d 589, 591 (Pa. 1991)). "[T]he Commonwealth bears the burden of establishing at least a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it." **Id.** (quoting **McBride**, 595 A.2d at 591) (emphasis omitted).

"[A] *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense." **Id.** (citation omitted) (alteration in original). "[T]he evidence need only be such

that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury." *Id.* (citations omitted). "The weight and credibility of the evidence are not factors at the preliminary hearing stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense." *Id.* (citations omitted).

"[I]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case." *Id.* (citation omitted) (alteration in original). "The use of inferences is a process of reasoning by which a fact or proposition sought to be established is deduced as the logical consequence from the existence of other facts that have been established." *Id.* at 1102-03. "The 'more-likely-than-not' test, must be applied to assess the reasonableness of inferences relied upon in establishing a *prima facie* case of criminal culpability." *Id.* at 1103.

Accordingly, we must determine whether the Commonwealth presented a *prima facie* case for each of the crimes alleged – unsworn falsification to authorities, tampering with or fabricating physical evidence, tampering with public records or information, and obstruction of the administration of law or other governmental function.

Unsworn Falsification to Authorities

We will first address whether the trial court properly concluded the Commonwealth failed to establish a *prima facie* case of unsworn falsification

to authorities. The Commonwealth maintains Williams made a written statement when he signed the interview that Lieutenant Clough had transcribed, because he adopted the words as his own. It argues the statement was false because Williams claimed he had not spoken with Edwin in almost a year, but the phone records established text messages and phone calls between Edwin and Williams two months before the interview. It further maintains the court failed to credit the reasonable inference that Williams lied about performing the search of Theresa's license plate during a police investigation, rather than to aid his cousin. The Commonwealth also asserts Williams knew the statements were false and he made the false statements to mislead Lieutenant Clough in the performance of his official duties.

Williams counters that there was no written statement, as required by the statute. He maintains that the fact that he signed a statement that Lieutenant Clough had memorialized of the oral conversation did not transform the answers to a written statement in the meaning of the statute. He further claims the Commonwealth did not show that any statement was false.

The Commonwealth responds that prior cases have found a defendant made a written statement based on a signature on a document. It points out that in **Commonwealth v. Cherpes**, 520 A.2d 439, 444 (Pa.Super. 1987), the defendant had signed, but not drafted, a written financial disclosure on which the unsworn falsification conviction was based. It further claims there are no cases holding that a statement the defendant adopted by signing it cannot be a written statement for purposes of the statute.

A person commits the crime of unsworn falsification to authorities "if, with intent to mislead a public servant in performing his official function, he: (1) makes any written false statement which he does not believe to be true[.]" 18 Pa.C.S.A. § 4904(a)(1).

The trial court did not err in finding that the Commonwealth failed to establish a *prima facie* case of unsworn falsification to authorities. The internal affairs interview, which was conducted as an oral interview, memorialized in writing by Lieutenant Clough, and signed by Williams, does not constitute a "written false statement," under the statute. **Cf. Commonwealth v. Gaithers**, 13 Pa.D&C.3d 668, 670 (Pa.C.P. Montg. 1978) (defendant convicted of making an unsworn falsification to police officer where defendant gave a false identity during an interview and signed her false name on the interrogation form).

Tampering With or Fabricating Physical Evidence

We next will address whether the Commonwealth presented a *prima face* case for tampering with or fabricating physical evidence. A person commits tampering with or fabricating physical evidence under Section 4910(1) where the person, "believing that an official proceeding or investigation is pending or about to be instituted, he: (1) alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation[.]" 18 Pa.C.S.A. § 4910(1).

The Commonwealth argues the reasonable inferences from the evidence support the conclusion that Williams presented to Lieutenant Clough a fake homicide file to impede the internal affairs investigation. It argues Williams "could not have failed 'to believ[e] that an official . . . investigation was pending,'" pointing out he was being interviewed by an internal affairs officer for purposes of discovering why he ran Theresa's plates. Commonwealth's Br. at 20 (alteration in original). It argues Williams then knowingly presented a fake homicide file with the intent to mislead Lieutenant Clough into believing Theresa was a person of interest in a police investigation. The Commonwealth argues the homicide file was a "record, document or thing" and Williams presented the folder containing information he knew to be false.

Williams maintains the Commonwealth failed to prove a *prima facie* case of tampering with evidence. He argues that it is "unclear how [his] addition of materials to an investigative file that he was required to compile, maintain and update constitutes either the destruction, alteration or concealment of evidence within the meaning of the statute." Williams' Br. at 28. He also points out that the Commonwealth did not present any testimony to show when the information was printed. As a result, according to Williams, it cannot prove it was printed after the internal affairs interview, and therefore there is no evidence he had knowledge of the official investigation at the time he allegedly printed the materials.

He further argues the Commonwealth did not show he had the requisite intent to impair the availability of the item to the proceeding or investigation.

He maintains this is so because he claims he did not alter, conceal, destroy or remove evidence. Rather, in his view, "[t]he information [he] printed and placed in the homicide investigation file remained in the investigation file, and it was therefore accessible to anyone who wished to review it." *Id.* at 29.

The Commonwealth responds there is no indication that the definition of "alter" cannot include an addition to something, such as Williams adding the folder containing Theresa's information to the homicide file.

We conclude the court did not err in dismissing this charge. The Commonwealth failed to present *prima facie* evidence that the information regarding Theresa was added to the file after Williams learned of the Internal Affairs Division's investigation. Rather, the IAD detective merely testified he retrieved the file, and the prosecution presented no testimony from anyone that the entire file had been procured for him. That the second file was not included with the first is not evidence, even at a *prima facie* level, that the material was added after Williams learned of the investigation.

Tampering With Public Records or Information

The Commonwealth next challenges the dismissal of the tampering with public records or information, as a third-degree felony, charge.

A person commits the offense of tampering with public records or information under Section 4911(a)(1) if he:

> (1) knowingly makes a false entry in, or false alteration of, any record, document or thing belonging to, or received or kept by, the government for information or record, or required by law to be kept by others for information of the government[.]

- 11 -

18 Pa.C.S.A. § 4911(a)(1). Because the Commonwealth charged Williams with tampering with public records graded as a third-degree felony, it needed to prove he intended to "defraud or injure." *Id.* at § 4911(b) (providing "[a]n offense under this section is a misdemeanor of the second degree unless the intent of the actor is to defraud or injure anyone, in which case the offense is a felony of the third degree").

The Commonwealth argues the reasonable inferences from the evidence support the conclusion that Williams presented Lieutenant Clough a fake homicide file to impede the internal affairs investigation. It argues Williams knowingly presented a fake homicide file with the intent to mislead Lieutenant Clough into believing Theresa was a person of interest in a police investigation. The Commonwealth argues the homicide file was a "record, document or thing" kept by the government for information or record and Williams presented the folder containing information he knew to be false and with the intent that the internal affairs division take it as a genuine part of the homicide file.

Williams maintains the Commonwealth failed to prove a *prima facie* case of tampering with public records or information because it failed to establish the homicide file qualified as a public record within the purview of the statute. He relies on *Clites v. Upper Yoder Township*, 485 A.2d 724, 727 n.5 (Pa. 1984), where the Pennsylvania Supreme Court concluded a police chief's destruction of logbooks did not constitute a violation of Section 4911. He argues the Commonwealth failed to present evidence as to how the homicide

- 12 -

files are stored or maintained or whether they would be required to provide the contents of the file to anyone. He also maintains the Commonwealth failed to show he made a false entry or alteration in the file. He also faults the Commonwealth for failing to elicit testimony about what materials usually are included in a homicide file. He reasons the inclusion of his own notes and computer print-outs cannot be a false entry or alteration. He further notes that the Commonwealth charged obstruction of public records as a felony and therefore was required to establish Williams had an "intent to defraud or injure," claiming that an intent to defraud or injure required pecuniary or property loss or the loss of an important right.

The Commonwealth responds by distinguishing **Clites**, and citing **Commonwealth v. Barger**, 375 A.2d 756, 764 (Pa.Super. 1977), which held a state police accident investigation report is a "record, document or thing" under Section 4911(a)(1). It argues it did not have to present at the preliminary hearing stage evidence regarding how homicide files are stored and maintained. It further maintains the intent to defraud did not require pecuniary loss, and rather falsifying a homicide could have been found to defraud or injury individuals and organizations, including the Philadelphia Police Department by undermining the public trust, the citizens of Philadelphia who have a right to effective and honest investigation, and Theresa, who was falsely implicated by Williams' actions. It also maintains Williams defrauded the internal affairs division by deceiving it to avoid punishment.

The trial court did not err in dismissing this charge. The homicide file is a "public record or thing," as contemplated by the statute, as it is kept by the government and is something that police officers are required to compile. ***See Barger***, 375 A.2d at 763-64 (finding police accident report was a public record, pointing out the all-inclusive language of the statute, and reasoning that at a minimum the report was kept by the police and noting the police were required to distribute to specified individuals and agencies, and noting that the fact that it was inadmissible as evidence did not affect its status under Section 4911).[7] However, the Commonwealth failed to prove Williams made a false entry or alteration to the file. As the homicide detective, he added his own notes and computer printouts to the file. The Commonwealth's assertion that Williams "falsified" the second file is mere supposition and speculation. There is nothing of record to show that such was the case. The Commonwealth failed to adduce *prima facie* evidence of tampering with a public record.

---

[7] In ***Clites***, relied on by Williams, the Pennsylvania Supreme Court found a police officer could not be disciplined for destroying logbooks. In doing so, it found the Board of Supervisors "erred in concluding that [the] appellant's destruction of the old log books constituted a violation of 18 Pa.C.S.A. § 4911." 485 A.2d at 727 n.5. It reasoned there was no evidence "concerning the nature of the log books" that "impl[ied] a duty to keep them for future use." ***Id.*** at 727. It pointed out the logbooks were like diaries and "there was no evidence that the books contained any information that was essential to the legal recordkeeping requirements of a police department" and there were separate records kept for arrests. ***Id.*** Here, the homicide file is more akin to the accident report in ***Barger*** than the logbooks in ***Clites***.

Obstructing Administration of Law or Other Governmental Functions

The final charge at issue is the obstructing administration of law or other governmental functions charge.

The Commonwealth argues Williams intentionally obstructed the internal affairs investigation by lying about his contact with Edwin and presenting a false homicide file, which also was a breach of his official duty. Further, Williams committed "any other unlawful acts" when he committed unsworn falsification and tampering with evidence and with public records.

Williams argues the Commonwealth failed to show Williams lied to Lieutenant Clough, claiming that the question asked was when was the last time Williams "spoke" with Edwin, to which Williams responded possibly a year ago, and the Commonwealth presented evidence that Williams and Edwin texted each other, not spoken with each other. He claims the phones calls were not answered or were sent to voice mail, as they were under two minutes. He further argues that "mere lying" in response to police questioning does not violate Section 5101. Williams contends the alleged falsification of the homicide file cannot support the charge because the Commonwealth provided no evidence about the dates the documents were printed and did not introduce the file itself to show the information concerning Theresa did not belong there.

A person commits the crime of obstructing administration of law or other governmental functions if "he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence,

physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions." 18 Pa.C.S.A. § 5101.

In **Commonwealth v. Shelly**, the defendant was convicted of obstruction of justice after the trial court found his providing a wrong name to police officers constituted an "unlawful act." 703 A.2d 499, 503 (Pa.Super. 1997). We concluded that "no statute . . . criminalizes 'mere lying' in response to police questioning, and section 5101 does not fill this gap." *Id.* at 504. We reasoned that the Crimes Code provides specific situations where "falsity is punishable," such as with unsworn falsification, but that each provision contained elements not contained in the obstruction statute. *Id.* at 504, 504 n.6. We concluded that, as there were sections dealing with falsity to police, "we cannot presume the legislature's failure to include this most common scenario to be the result of a desire to penalize it in the 'catchall' of section 5101." *Id.*[8]

We conclude the trial court did not err in dismissing the obstruction charge. Lying during the internal affairs interview cannot be the basis of an obstruction charge, as mere lying during an interview does not meet the

---

[8] **Shelly**'s holding that providing false identification to law enforcement is not a crime has been superseded by statute. **See** 18 Pa.C.S.A. 4914. This has no bearing on our reasoning.

definition of any codified crime and therefore is not an "unlawful act." ***See id.*** Further, the allegation that Williams' added information to the homicide file, a file which would be used by him to conduct the investigation, is akin to lying, cannot support an obstruction charge as "any other unlawful act." Moreover, because we have concluded that the Commonwealth did not establish a *prima facie* case for the other crimes charged, the charge cannot be based on the "any other unlawful act" catchall provision. Further, although the Commonwealth maintains the alleged addition to the homicide file was a breach of official duty, they provide no legal citation to support this claim.

Order affirmed.

Judge McCaffery joins the memorandum.

Judge Pellegrini files a dissenting memorandum.


*Judgment Entered.*

_____
*Joseph D. Seletyn, Esq.*
*Prothonotary*


Date: _11/3/2022_