Pennsylvania Labor Relations Board, Appellant,
*v.* Elk Motor Sales Company.

Argued January 9, 1957. Before JONES, C. J., BELL,
CHIDSEY, MUSMANNO, ARNOLD and JONES, JJ.

174

reargument refused April 15, 1957.

*O. S. Bortner,* with him *James F. Wildeman,* Special Deputy Attorney General, and *Leon Ehrlich,* Deputy Attorney General, for appellant.

*Charles Houston,* with him *Rupprecht & Houston,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 18, 1957:

The Pennsylvania Labor Relations Board (hereinafter called the Board) has appealed from a final decree of the Court of Common Pleas of Elk County which reversed an order of the Board against appellee and dismissed the Board's petition for enforcement of its order.

Paul R. Baumgratz, a former employee of appellee, filed with the Board a charge of unfair labor practices against the appellee. The Board issued a complaint charging appellee with unfair labor practices in violation of §6, subsections 1 (a) and (c) of the Pennsylvania Labor Relations Act.[1] This section, provides,

---

[1] Act of June 1, 1937, P. L. 1168, as amended, 43 PS §211 et seq.

inter alia: "(1) It shall be an unfair labor practice for an employer—(a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act . . . (c) By discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization: . . .". Upon appellee's filing an answer to the complaint, a hearing was held before a Board trial examiner. On March 28, 1955, after hearing, the Board issued an order dismissing the charge and complaint. After Baumgratz filed exceptions to this order and after oral argument thereon, the Board directed that a new hearing be held for the stated purpose of clarifying the record. This new hearing was held[2] and thereafter on July 15, 1955 the Board issued an order reversing its former order and finding appellee guilty of unfair labor practices. This order directed appellee (1) to cease restraining and coercing his employees in the exercise of their rights to self organization and collective bargaining, (2) to cease discriminating against his employees in regard to tenure of employment with respect to their association with, membership in and activities on behalf of a labor organization, (3) to offer Baumgratz full reinstatement to his former position without prejudice and with full pay and (4) to post a copy of the decision and order and furnish evidence of compliance. After oral argument on appellee's exceptions, the Board entered an order dismissing the exceptions and made final its order of July 15, 1955.

Appellee then filed a petition in the Court of Common Pleas of Elk County to which the Board filed an answer together with a petition for enforcement of its

---

[2] Before a different trial examiner than the examiner at the first hearing.

order. The court, holding that the Board's findings were not supported by substantial and legally credible evidence as required by the statute, reversed the Board's final order and dismissed its petition for enforcement of the order.

The factual background of this litigation is not seriously disputed by either party. Appellee, an authorized Ford dealer doing business under an assumed name,[3] employed Baumgratz as a mechanic from September, 1946 to January 18, 1955. In June, 1954, a group of appellee's employees met and selected Baumgratz and one Frank Pargiani to request appellee on their behalf to give them paid vacations and holidays. Baumgratz and Pargiani, with Pargiani as spokesman, met with appellee and made the request. Appellee granted the employees' request and at the same time stated[4] that the employees should get together at least once a week to settle any differences and grievances they might have. It is clear from the testimony that the employees did not intend to form any organization at the meeting in June, 1954 and no further meetings were held.

In January, 1955—approximately 6½ months later —Baumgratz approached his fellow employees individually suggesting the formation of a club "to get together for more friendly relations and to settle any grievances we may have". Baumgratz admitted he did not use the words "labor grievances" in speaking to all his fellow employees because he feared lest some would not understand him. Twelve of the fifteen employees agreed to join a club even though no labor grievances then existed.

---

[3] The appellee concern is solely owned by E. E. Wittman. Where the word "appellee" is used in this opinion reference is to Wittman.

[4] Baumgratz's testimony confirms this statement.

On January 18, 1955 Baumgratz approached appellee asking him if he would object to the formation of a club. Baumgratz testified that he had no chance to explain all the details because appellee immediately stated that he felt Baumgratz was dissatisfied with his job, that he had a lot to say to the fellows and that he thought Baumgratz should quit. Baumgratz returned to his work but several minutes later was handed the wages due him plus one week's extra pay and discharged. The appellee testified that Baumgratz was discharged chiefly for economic reasons but also because he felt Baumgratz was dissatisfied with his job and in some instances his work was unsatisfactory.

On two subsequent occasions appellee and Baumgratz discussed the discharge. Both parties agree that on January 19, 1955, appellee told Baumgratz, in substance, that it was his place and that if he, the appellee, could not get along with someone he could get rid of him. Appellee testified that on this occasion he told Baumgratz that business was bad and he was making no profit. On March 3, 1955—after the unfair labor practices charge was filed—Baumgratz and appellee talked. Baumgratz testified that appellee offered to take him back if he would drop the charges. Appellee categorically denied he offered to take Baumgratz back and testified the sole reason for the contact was to attempt to dispel the bad feeling which had arisen on Baumgratz's part.

The testimony at both hearings before the Board's examiners was almost identical.[5] At the second hearing two additional witnesses testified; at most, their

---

[5] Appellant in its brief (p. 8) acknowledges "the second hearing did not yield any evidence materially different from that adduced at the first hearing. . . ."

testimony supplied slight corroboration to the testimony previously given by both parties.

In its decision of July 15, 1955, the Board found it evident that Baumgratz was discharged "because of his leadership and activities among the employees" and "because of the prominent role he played in the formative stages of organizing a group for purposes which would qualify it as a labor organization". The learned court below held there was no substantial or legally credible evidence to support the Board's findings that (1) a labor organization had been formed and (2) that appellee committed an unfair labor practice by discharging Baumgratz because of labor activity on his part in forming this labor organization.

The scope of appellate review in this type of case was admirably enunciated by former Chief Justice HORACE STERN, then Mr. Justice STERN, in *Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc.*, 345 Pa. 398, 399, 400, 29 A. 2d 90, 92: "We approach consideration of the case with full realization of the limited scope of appellate review in such a proceeding. The amendatory act of June 9, 1939, P. L. 293, section 9 (b) (43 P.S. 211, 9 (b)), provides that 'the findings of the board as to the facts, if supported by substantial and legally credible evidence, shall . . . be conclusive.' This means that it is the function of the board not only to appraise conflicting evidence, to determine the credibility of witnesses, and to resolve primary issues of fact, but also to draw inferences from the established facts and circumstances: National Labor Relations Board v. Nevada Consolidated Copper Corporation, 62 Sup. Ct. Rep. 960; Agwilines, Inc. v. National Labor Relations Board, 87 Fed. 2d 146, 151; National Labor Relations Board v. Moore-Lowry Flour Mills Co., 122 Fed. 2d 419, 422. Upon judicial review, however it is the duty of the

court to determine whether the findings of the board are supported by the substantial and legally credible evidence required by the statute and whether the conclusions deduced therefrom are reasonable and not capricious. All orders and decrees of legal tribunals, including those of administrative boards and commissions, must be supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty; otherwise our vaunted system of justice would rest upon nothing higher than arbitrary edicts of its administrators. 'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion': Consolidated Edison Co. v. National Labor Relations Board, 305 U. S. 197, 229. 'Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established': National Labor Relations Board v. Columbia Enameling & Stamping Co., 306 U. S. 292, 300. 'The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary power': National Labor Relations Board v. Thompson Products, Inc., 97 Fed. 2d 13, 15; National Labor Relations Board v. Union Pacific Stages, Inc., 99 Fed. 2d 153, 177. 'Suspicion may have its place, but certainly it cannot be substituted for evidence': Union Trust Co. of Pittsburgh's Petition, 342 Pa. 456, 464, 20 A. 2d 779, 782." See also: *National Labor Relations Board v. Bradford Dyeing Ass'n.*, 310 U. S. 318, 60 S. Ct. 918.

The Board has the unquestionable right to draw inferences from the facts and circumstances and to formulate findings thereon. Our duty is to determine whether the court below erred in holding that the Board's findings were not supported by substantial and legally credible evidence. In our determination of this

inquiry we must decide whether the testimony was sufficient under the statutory criterion to prove (1) the existence of a "labor organization" as defined by the Pennsylvania Labor Relations Act and (2) that Baumgratz's discharge was caused because he formed or joined this "labor organization".

Section 3 (f) of the Pennsylvania Labor Relations Act, supra, 43 P.S. §211.3 (f) defines a labor organization as follows: "The term 'labor organization' means any organization of any kind, or any agency or employe representation committee or plan in which employes participate, and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, . . . ."

A careful examination of the testimony in this case fails to disclose any substantial evidence from which it could be reasonably inferred that any "labor organization" ever existed among appellee's employees. The evidence established that in June, 1954 the appellee's employees met, considered two grievances, authorized a committee to meet appellee thereon and these grievances were promptly settled by appellee. No other meeting was ever held by the employees. Not until 6½ months later did Baumgratz form a plan to create a club for social purposes and "to settle grievances and that"—when there admittedly were no grievances in existence. The plan was revealed by Baumgratz to his fellow employees individually; no dues were paid and no cards or other indicia of club membership issued. The words "labor grievances" were not used by Baumgratz in all instances. It is significant that, at the first hearing, Lawrence Woelfel, Baumgratz's father-in-law, failed to indicate any knowledge that one of the club's purposes was the settlement of labor grievances, whereas, at the second hearing, when his testi-

mony differed materially, the same witness was so led by the trial examiner's questioning that his testimony was of little, if any, value.

The lower court was impressed by the fact that appellee's employees before forming the club requested appellee's consent. The lower court stated: "If, in fact, it was the intention of the employees to create a labor organization or even a club for merely social purposes, they must have known that it was not necessary to obtain the employer's consent. Labor organizations are formed without regard to the employer's wishes and the employer might have been guilty of an unfair labor practice if he had become involved in the formation of such an organization."

It is further evident, as Baumgratz himself testified, that the employees had no grievances and that Baumgratz was satisfied with his wages and conditions of employment. As a matter of fact, the appellee himself encouraged his employees to meet and to settle any differences which encouragement can hardly be classed as the act of an employer bent upon the destruction of an incipient labor organization. George Pfaff, appellee's parts manager, at the second hearing testified that he was invited to join the proposed club and was told by Baumgratz that it was being formed for social purposes only. As a representative of management Pfaff would hardly have been asked to join a labor organization. The only reasonable conclusion which can be drawn from all the testimony is that there was no substantial evidence tending to show any intention to form or create a labor organization as defined by the statue. As previously stated, a mere scintilla of evidence does not suffice.

Nor can we agree that there was substantial evidence to support the Board's finding that Baumgratz

was discriminatorily discharged because of his activity in forming or joining a labor organization. The burden of proving unfair labor practices rests entirely upon the Board: *Union Trust Company of Pittsburgh's Petition*, supra, page 464; *Pennsylvania Labor Relations Board v. Sansom House Enterprises, Inc.*, 378 Pa. 385, 393, 106 A. 2d 404, 408. The appellee had the unquestioned right to discharge Baumgratz for any reason, or for no reason, so long as it was not done for a reason prohibited by the statute: *Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc.*, supra, page 401 and cases therein cited; *Pennsylvania Labor Relations Board v. Sansom House Enterprises, Inc.*, supra, page 393.

The Board treated appellee's contention that Baumgratz was discharged for economic reasons and for unsatisfactory work as having little, if any, merit. The Board's reasoning was based on the fact that appellee at the time of Baumgratz's discharge stated that Baumgratz was not satisfied with his job. The Board was not justified in disregarding appellee's other stated reasons for the discharge and placing their determination on the one reason. Appellee's testimony in this respect was not substantially contradicted nor impeached. Under the circumstances here presented we are convinced that the Board was not justified in finding that the discharge of Baumgratz was the result of labor activities. *National Labor Relations Board v. Tex-o-Kan Flour Mills Company*, 122 Fed. 2d 433. Suspicion is not a substitute for evidence: *Union Trust Company of Pittsburgh's Petition*, supra, page 464; *Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc.*, supra, page 400. Neither the Board nor Baumgratz produced substantial evidence that the appellee even knew of the plans to form this **club**.

We are of the opinion that the lower court was entirely correct in its conclusion that ". . . the inference found by the Board after the first hearing was supported by substantial and legally credible evidence and was the only reasonable, logical and proper one which could be drawn from the testimony and circumstances and that the inference drawn after the second hearing was not supported by the substantial and legally credible evidence required by the act."

Order affirmed at appellant's cost.

Mr. Justice MUSMANNO dissents.