## Radzievich Economy Markets, Inc.

*Walter Sidoriak,* for appellant.

*John Curran,* for Radzievich Economy Markets Employees Association.

*William Tomar,* for Retail Clerks International Association, AFL-CIO.

*James F. Wildeman,* Assistant Attorney General, *Leon Ehrlich,* Deputy Attorney General and *Thomas D. McBride,* Attorney General, for Pennsylvania Labor Relations Board.

STAUDENMEIER, J., June 3, 1957.—The Radzievich Economy Markets, Inc., hereinafter called the employer, has appealed to this court the decision and order of the Pennsylvania Labor Relations Board, hereinafter called the board, and the board has filed a petition for enforcement of its decision and order finding the employer guilty of an unfair labor practice.

On February 23, 1956, the Retail Clerks International Association, hereinafter called union, filed a petition with the Pennsylvania Labor Relations Board alleging that a question concerning the representation

for collective bargaining of a group of employes of the employer had arisen. The union's petition requested that it be certified as the collective bargaining representative for a unit of employes of the employer. Thereafter the board issued an order directing an investigation, and a hearing was held on March 14, 1956, at which time testimony was taken. At this hearing both the union and the employer were represented, and an appearance was entered for a group known as the Radzievich Economy Markets Employes Association. After the testimony was taken, the board issued a decision and order on April 27, 1956, directing that an election by secret ballot be held on May 4, 1956, for a unit of employes of the employer which excluded the meat department employes, truck drivers, warehousemen and supervisory personnel. The order of the board also excluded from the ballot the Radzievich Economy Markets Employes Association. On May 2, 1956, the employes association filed a petition for judicial review of the decision and order directing an election, and as a result the election which was scheduled was subsequently stayed. The employer filed a petition with this court for a review of the same decision and order.

On May 10, 1956, the union filed an unfair labor practice charge with the board, alleging that the employer had engaged in unfair labor practices within the meaning of section 6, subsec. 1, clauses (*a*) and (*e*), of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, sec. 6, 43 PS §211.6. The board caused a complaint to be issued and a hearing was held at which testimony was taken relevant to the charges filed by the union.

On May 21, 1956, this court vacated its order staying the election, and on July 13, 1956, the board issued a nisi decree and order, finding the employer guilty of an unfair labor practice within the meaning of section 6, subsec. 1, clause (*a*), of the act referred to above.

Exceptions were filed by the employer, and argument was held before the board. These exceptions were dismissed, and the board made its order final. The employer petitioned this court for judicial review of the decision and order of the board which found the employer guilty of an unfair labor practice. Thereafter, the board issued a nisi decree and order certifying without an election the union as the collective bargaining representative for the unit of employes referred to above. Exceptions were filed by the employer, and a request was made at that time for an election by secret ballot. The board dismissed the exceptions and ordered in its final order that the union be certified as the collective bargaining representative. The decision of the board has been appealed by the employer to this court, and the board has filed a petition for enforcement of its decision and order finding the employer guilty of an unfair labor practice.

In the recent case of Pennsylvania Labor Relations Board v. Elk Motor Sales Co., 388 Pa. 173, 178, 130 A. 2d 501, 505, the court said:

"The scope of appellate review in this type of case was admirably enunciated by former Chief Justice Horace Stern, then Mr. Justice Stern, in Pennsylvania Labor Relations Board v. Kauffmann Department Stores, Inc., 345 Pa. 398, 399, 400, 29 A. 2d 90, 92: 'We approach consideration of the case with full realization of the limited scope of an appellate review in such a proceeding. The amendatory act of June 9, 1939, P. L. 293, section 9 (*b*) (43 PS 211, 9 (*b*)), provides that "the findings of the board as to the facts, if supported by substantial and legally credible evidence, shall . . . be conclusive." This means that it is the function of the board not only to appraise conflicting evidence, to determine the credibility of witnesses, and to resolve primary issues of fact, but also to draw inferences from the established facts and circum-

stances: National Labor Relations Board v. Nevada Consolidated Copper Corporation, 62 Sup. Ct. Rep. 960; Agwilines, Inc. v. National Labor Relations Board, 87 Fed. 2d 146, 151; National Labor Relations Board v. Moore-Lowry Flour Mills Co., 122 Fed. 2d 419, 422. Upon judicial review, however it is the duty of the court to determine whether the findings of the board are supported by the substantial and legally credible evidence required by the statute and whether the conclusions deduced therefrom are reasonable and not capricious. All orders and decrees of legal tribunals, including those of administrative boards and commissions, must be supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty; otherwise our vaunted system of justice would rest upon nothing higher than arbitrary edicts of its administrators. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion": Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 229. "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established": National Labor Relations Board v. Columbia Enameling & Stamping Co., 306 U.S. 292, 300. "The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary power": National Labor Relations Board v. Thompson Products, Inc., 97 Fed. 2d 13, 15; National Labor Relations Board v. Union Pacific Stages, Inc., 99 Fed. 2d 153, 177. "Suspicion may have its place, but certainly it cannot be substituted for evidence": Union Trust Co. of Pittsburgh's Petition, 342 Pa. 456, 464, 20 A. 2d 779, 782:' See also: National Labor Relations Board v. Bradford Dyeing Ass'n., 310 U.S. 318, 60 S. Ct. 918."

With this statement of the law as to the province of the court in reviewing a decision of the board, we shall determine whether there was substantial and legally credible evidence to support the findings of fact made by the board. The relevant findings of fact will be discussed.

The board found that on April 28, 1956, a meeting of all the employes of the employer was called by John Radzievich, president of the corporation.

The next finding of fact is: "That John Radzievich told those present at the meeting that if the Union got in he was going to close the store. He also told those present that if the Union were to lose the election some adjustments would be made." This finding of fact is supported by the testimony of Edward Eister, a grocery clerk.

The next finding of fact is: "That Veronica Babilya, a grocery clerk, was told by Frank Antinozzi, Junior, on May 4, 1956, that she would get a $7.00 increase in salary and that other adjustments would be made, the increase in salary to go into effect on the following Monday, but she could not collect it until after the election and then only if the Union lost the election."

The next finding of fact is: "That Dolores Maley, bookkeeper, was told by Frank Antinozzi, Junior, on April 28, 1956, that she was to get a raise which was to go into effect on the following Monday; however she couldn't collect it until after the election and then only if the Union lost the election."

The next finding of fact is: "That Joan Lord, a checker, was told by Frank Antinozzi, Junior, on April 30, 1956, that she was to get a raise which was to go into effect the following week; however, she couldn't collect it until after the election and then only if the union lost the election."

The findings referred to above are the important and pertinent findings upon which the board found the

employer guilty of an unfair labor practice. It is our opinion that the testimony supporting these findings is substantial and legally credible and is therefore conclusive as far as our province is concerned.

It will be noted that some of these findings are based upon the fact that Frank Antinozzi, Jr., told these various employes of the benefits they would receive in the event that the union lost the election. The record shows that Antinozzi is the son-in-law of John Radzievich and that he was to handle the help and handle the personnel of the store. It is vain for the employer to argue that Mr. Antinozzi did not have sufficient control and possess supervisory status for the employer. Even the grocery manager, Mr. Sorokach, testified that he had three bosses, Mr. Radzievich Mrs. Radzievich and Frank, the store manager, (reference being made to Frank Antinozzi, Jr.). There is no merit in the employer's exception concerning Mr. Antinozzi.

In discussing the status of Radzievich Economy Markets Employes Association, we call attention to section 3 of the Pennsylvania Labor Relations Act, 43 PS §211.3 (f), which defines a labor organization as follows:

"The term 'labor organization' means any organization of any kind, or any agency or employe representation committee or plan in which employes participate, and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, . . ."

There is not a scintilla of evidence in this record to show that the Radzievich Economy Markets Employes Association comes within the statutory definition of a labor organization, and it is our opinion that they have no status in this matter and that the findings of the board relevant to this association are supported by credible and substantial testimony of record.

On October 31, 1956, the board handed down its final decree dismissing the exceptions of the employer. In its decision the board held the request of the employer for a secret ballot is hereby refused, since the employer is not "an employer who has not committed an act herein defined as unfair labor practice," as set forth in section 7(c) of the act.

We do not agree with this portion of the board's opinion.

In the case of Shafer Petition, 347 Pa. 130, 135, 31 A. 2d 537, 540, the court distinguished the two parts of section 7(c) referred to by the board. The court said:

"The second sentence of Section 7 (c) relates to the conduct of the investigation, hearing and determination *after* it has been properly instituted as provided in the first sentence. It is with respect to this provision that we differ from the court below. In the second sentence it is provided that the Board shall have no discretion to refuse a secret ballot within twenty days if *'either party to the controversy'* so requests. Although the legislature, in the first sentence of Section 7 (c) and in Section 10.1 placed express qualifications upon the rights of those who had been found guilty of unfair labor practices, it made no such qualification in the second sentence of Section 7 (c) regarding those who should have the right to request a secret ballot. Although an 'unfair' employer has no right, under the first sentence, to initiate an investigation concerning representation, he may, as a *party to the controversy* after it has been properly instituted, demand a secret ballot. The intention of the legislature is too clear to be disregarded, and it must be given effect. The error of the court below lay in its failure to distinguish between the purpose of the two sentences, and to see that in the second sentence the legislature made no distinction between 'fair' and 'unfair' employers."

The Shafer case was followed in the case of Brass Rail Restaurant Co. v. Pennsylvania Labor Relations Board, 375 Pa. 213, 219, 100 A. 2d 80, 83, wherein the court said:

"Section 7 (c) of the Pennsylvania Labor Relations Act, 1937 P. L. 1168, as amended, 43 P.S. 211.7 provides: 'Whenever a question arises concerning the representation of employes the board may, and, upon request of a labor organization (etc) . . . shall investigate such controversy . . . In any such investigation, the board . . . may utilize any suitable method to ascertain such representatives, except that if either party to the controversy so requests, a secret ballot of employes shall be taken within twenty days after such request is filed . . .'

"Our construction of this section is, that when the request for investigation is made by a labor organization or by a 'fair' employer, the investigation is mandatory. When once undertaken, the Board may in its *discretion* hold an election to determine representation, unless either party requests an election, in which event the election is *mandatory*." (Italics supplied.)

In the instant case there was a request by the employer for an election. It was error for the board to refuse it. In our opinion an employer can be guilty of an unfair labor practice and still be entitled to a secret ballot upon request. We shall grant the petition for enforcement.

And now, June 3, 1957, the record is herewith returned to the board for the purpose of conducting an election by secret ballot of the employes in the unit involved in this proceeding.

The board's request for enforcement is granted and the employer Radzievich Economy Markets, Inc., shall:

1. Cease and desist from interfering with, restraining and coercing their employes in the exercise of their rights to self-organization and collective bargaining as

guaranteed to them by the Pennsylvania Labor Relations Act.

2. Take the following affirmative action, which will effectuate the policies of the Pennsylvania Labor Relations Act:

a. Post a copy of this order within five days in a conspicuous place, readily accessible to the employes, at the place of business located at No. 331 Sunbury Street, Minersville, and have the same remain so posted for a period of 15 consecutive days.

b. Furnish satisfactory evidence to the Pennsylvania Labor Relations Board by affidavit of compliance with this order within 20 days from the effective date hereof.