861 A.2d 938

Patric GIBSON, c/o Kathy J. Gibson,

v.

**WORKERS' COMPENSATION APPEAL BOARD (ARMCO STAINLESS & ALLOY PRODUCTS),**

**Appeal of Armco Stainless & Alloy Products.**

Supreme Court of Pennsylvania.

Argued March 1, 2004.

Decided Nov. 22, 2004.

472

Albert S. Lee, Pittsburgh, for Armco Stainless & Alloy Products.

Amber Marie Kenger, Mechanicsburg, Richard C. Lengler, Harrisburg, for W.C.A.B.

Darren Keith Parr, Jason T. Shipp, Pittsburgh, for Patric Gibson c/o Kathy J. Gibson.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice NEWMAN.

Armco Stainless & Alloy Products (Appellant) appeals by allowance an Order of the Commonwealth Court reversing a decision of the Workers' Compensation Appeal Board (Board). The Board had reversed a decision of a Workers' Compensation Judge (WCJ) that granted the Fatal Claim Petition of Kathy J. Gibson (Claimant) following the death of her husband, Patric Gibson (Decedent). Further, Appellant filed an Application for Supersedeas with this Court to stay the award of death benefits. By Order of October 1, 2003, this Court granted the Application for Supersedeas. Given the standard that we articulate today for the admission of lay opinion evidence of a technical or scientific nature in workers' compensation proceedings, we now reverse the Order of the Commonwealth Court.

### *FACTS AND PROCEDURAL HISTORY*

Decedent, who worked as a laborer for Appellant in the maintenance department of its Pittsburgh and Bridgeville steel plants and smoked one and one-half to two packs of

cigarettes per day, died on October 14, 1994, from complications of bronchogenic lung cancer. On October 2, 1997, Claimant filed a Fatal Claim Petition alleging that her husband died as a result of continuous exposure to deleterious fumes, gases, dust, and particles, including asbestos, while working for Appellant. The death certificate listed hemoptysis[1] due to lung cancer as the primary cause of death, with laryngeal nerve paralysis and adrenal metastases as secondary causes. (Death Certificate dated October 17, 1994.) There is no mention of asbestosis, mesothelioma, or any asbestos-related disease.

At the hearing before the WCJ, Claimant presented the deposition testimony of Gregory L. Grier, Sr. (Mr. Grier), an employee of Appellant. Mr. Grier had worked at both the Pittsburgh and Bridgeville facilities during some of the same periods as Decedent over an interval of twelve to fourteen years. Mr. Grier testified that, when he worked at the Pittsburgh facility, he had seen a dark gray, heavy, cotton-type material that he believed was asbestos falling off the water piping that ran in and out of the furnace. (Grier Deposition dated February 25, 1998 at 18–19, 21–22.) He also testified that there was a dark gray material present at the Bridgeville facility that looked like it was sprayed on, which was also falling off the wall and laying on the ground. *Id.* at 29. He further stated that he did not have training or education concerning asbestos, that he would not be able to identify asbestos from other similar materials, and that he could not state with certainty that what he saw at the Pittsburgh and Bridgeville facilities was asbestos. *Id.* at 46–47.

Claimant also offered the deposition testimony of David Laman, M.D. (Dr. Laman), who testified that, based upon his review of Decedent's medical records, including three chest x-rays and chest CT scan, he found the presence of interstitial fibrosis, which he rated as a profusion of 1/0 s.t.,[2] that he

1. Stedman's Medical Dictionary, 26th ed. 781 (1995), defines "hemoptysis" as spitting of blood as from a bronchial or pulmonary hemorrhage.

2. "Opacities in the lung come in a variety of sizes but are only of two types—rounded and irregular.... [A] designation of s, t, or u indicates

considered consistent with asbestos exposure, and evidence of fullness in the left hilum [3] consistent with his lung cancer. Dr. Laman opined that Decedent's lung cancer was due to asbestos exposure to a substantial degree as well as to his long history of cigarette smoking. On cross-examination, however, Dr. Laman testified that: (1) there was nothing in the medical records that indicated any asbestos exposure; (2) he was unaware of the specifics of Decedent's job or any particular asbestos exposures Decedent may have had; (3) his medical reports noted that he was "assuming" that Decedent had significant exposure to respirable asbestos materials because of his occupation; and (4) an individual could have interstitial fibrosis from causes other than asbestos exposure. Dr. Laman also admitted that the interstitial fibrosis on the x-ray films remained exactly the same on the four chest films taken over a twelve-year period.

In opposition, Appellant presented the testimony of Peter Kaplan, M.D. (Dr. Kaplan), who also is board-certified in internal medicine, pulmonary diseases, critical care medicine, and is a B-reader.[4] Dr. Kaplan testified that he reviewed

the presence of irregularly shaped opacities. The letter designations also represent the increasing size of opacities from less than 1.5 millimeters in diameter, which is the "p" or "s" designation, up to 10 millimeters in diameter, which is the "r" or "u" designation." U.S. Department of Labor, *Judges' Benchbook of the Black Lung Benefits Act (2003)*, Chapter 2. http://www.oalj.dol.gov/public/bla-lung/refrnc/Beno2.htm last visited July 2, 2004 (hereinafter *"Judges' Benchbook"*). The quantity of opacities is reflected in the 1/0 rating. This is based on the following:

 0 = small opacities absent or less profuse than in category 1.
 1 = small opacities definitely present but few in number.
 2 = small opacities numerous but normal lung markings still visible.
 3 = small opacities very numerous and normal lung markings are usually partly or totally obscured.
*Id.*

3. The hilum is that point in an organ where the nerves and blood vessels enter and leave. The hilum of the lung is "a wedge-shaped depression on the mediastinal surface of each lung, where the bronchus, blood vessels, nerves, and lymphatics enter and leave the node." Stedman's Medical Dictionary, 26th ed. 798 (1995).

4. A B-reader is one qualified by examination to quantify and qualify the presence of asbestos-related disease precursors on chest x-rays, and is also known as a "final reader." The B-reader is considered more

Decedent's medical records and concluded that Decedent had well-documented lung carcinoma and died as a result of the disease. He testified that Decedent's heavy cigarette smoking would relate to a significant and definite risk of lung cancer. Dr. Kaplan opined that there was no support for the assertion that work exposure to asbestos played any role in Claimant's death, and his records showed no evidence of any asbestos-related diseases.

On cross-examination, Dr. Kaplan testified that he did not review any of the four x-ray films or the CT scan; instead, he relied only on the reports. Dr. Kaplan further testified that the S and T opacities were irregular-shaped and consistent with asbestosis, but acknowledged that, although a 1/1 profusion was usually required for a diagnosis of asbestosis, he had accepted a profusion of 1/0 in the past.

The WCJ credited the testimony of Mr. Grier, indicating that he had done so because it was unrebutted, and accepted the testimony of Dr. Laman over that of Dr. Kaplan, primarily due to Dr. Kaplan's failure to review the x-rays and CT scan. Based on this credited evidence, the WCJ found that Decedent had longstanding and continuous exposure to asbestos while working for Appellant, and his asbestosis was a significant contributing factor to his lung cancer and death. Accordingly, the WCJ granted Claimant's Fatal Claim Petition. Appellant appealed to the Board, which reversed the decision of the WCJ grounded on the premise that there was no substantial, competent evidence to support the finding that Claimant was exposed to asbestos while working for Appellant.

The Commonwealth Court reversed in a narrow four to three decision. The Majority Opinion relied upon the prior Opinion of that court in *Witco–Kendall Co. v. Workmen's Compensation Appeal Bd. (Adams)*, 127 Pa.Cmwlth.509, 562 A.2d 397 (1989), *petition for allowance of appeal denied,* 525

qualified than any reader other than an A-reader. He or she must pass a rigorous examination administered by NIOSH on behalf of the International Labor Organization to demonstrate proficiency in assessing and classifying x-ray evidence. The Department of Labor maintains a list of B-readers and their dates of certification. *Judges' Benchbook, supra.*

Pa. 652, 581 A.2d 577 (1990), which held that a claimant's description of his working conditions is sufficient to establish occupational exposure that may be rebutted by the employer. Specifically, the court there held that a claimant is not required to provide scientific evidence of a hazardous level of exposure to a toxic substance in his workplace and that his failure to identify the dust to which he was exposed as asbestos was not fatal to a claim for benefits. In *Witco–Kendall*, this testimony, in conjunction with other evidence, was sufficient for a finding of total disability from asbestos-related disease. Thus, the Majority opined that the testimony of Mr. Grier in the instant matter was sufficient evidence to support the determination of the WCJ that asbestos exposure was a significant contributing factor in the death of Decedent.

Judge Pellegrini authored a dissent, which was joined by Judge Cohn and Judge Leavitt. He observed that there was no evidence in this case that asbestos was present in the workplace. He also noted that Dr. Laman testified that his report was based on the assumption that Decedent had significant exposure to asbestos only because he was a steelworker, and that the medical records he reviewed did not identify any asbestos exposure or disease. Judge Pellegrini would have affirmed the decision of the Board to deny Claimant's Fatal Claim Petition.

Appellant's principal challenge in the matter *sub judice*, is that the WCJ erred in permitting Claimant to adduce lay opinion testimony on a technical or scientific issue relative to workplace exposure to asbestos.[5] We granted allowance of

5. Appellant does not specifically challenge the finding of the WCJ that asbestos exposure was a significant contributing factor in the death of Decedent, as it did before the Board. (Original Record, Appeal from Referee's Findings of Fact and Conclusions of Law, filed July 23, 2001, Attachment.) Despite that, we are troubled by the absence of testimony from any of Decedent's treating physicians, the want of a diagnosis of asbestos-related disease during his lifetime, and the lack of a *post mortem* examination that could have conclusively established asbestos-related disease among the actual contributory causes of death. Further, the existence of apparently inert opacities occurring on Decedent's chest x-rays over a period of twelve years seriously undermines a finding of asbestos-related disease as a significant cause of death. While unnecessary for a determination in the instant matter, we would

appeal to examine the parameters of lay opinion testimony on technical matters within the context of a workers' compensation proceeding and whether substantial evidence supported an award of fatal claim benefits in this instance.

## DISCUSSION

We begin with the touchstone of workers' compensation jurisprudence, which holds that, in a claim petition proceeding, a claimant bears the burden of establishing a work-related injury and its causal effect on wage earning capacity. *Vista Int'l Hotel v. Workmen's Compensation Appeal Bd. (Daniels)*, 560 Pa. 12, 742 A.2d 649, 654 (1999). In the classic claim petition proceeding, the employee shoulders this burden in order to receive continuing medical and wage benefits. Within the context of a fatal claim petition, the surviving family member bears the responsibility to substantiate the elements necessary to merit the benefit award. Those elements encompass establishment of a work-related injury or occupational disease, impact on the earning capacity of the employee, and, in the case of a fatal claim petition, that this injury or disease was a substantial contributing cause in bringing about the death of that employee. *McCloskey v. Workmen's Compensation Appeal Bd. (J.H. France Refractories, Inc.)*, 501 Pa.93, 460 A.2d 237, 241 (1983). As with all claim petitions, the elements necessary to support an award must be established by substantial evidence.

Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Clites v. Twp. of Upper Yoder*, 506 Pa. 349, 485 A.2d 724, 726 (1984). This is but another way to state that information admitted into evidence must have sufficient indicia of reliability and be relevant to the matter under

caution tribunals considering claims of this nature that the weight to be accorded to evidence of cause of death must reside primarily with the diagnosis of one or more treating physicians or significant findings upon *post mortem*. After-the-fact testimony by non-treating medical experts, who have had no contact with the decedent, and that is contrary to the diagnosis of a treating physician or the findings on *post mortem*, may be of limited value in establishing a cause of death.

consideration. Accordingly, to test whether the evidence relied upon is substantial evidence in support of a finding, the reviewing court should ascertain whether the evidence admitted is competent, and if it is competent, whether it is sufficient to support the administrative finding. If the evidence is both competent and sufficient, then the finding is supported by substantial evidence.

Appellant asserts that there is no evidence to support the finding that Decedent had longstanding and continuous exposure to asbestos, or in fact any exposure to asbestos. It argues that no reasonable mind could accept the testimony of Mr. Grier as supportive of long-term asbestos exposure. It challenges the reliance upon this lay opinion testimony by both the WCJ and the Commonwealth Court to effect an award of benefits. Appellant complains that the Commonwealth Court essentially eviscerated the substantial evidence standard of review by holding that the lay testimony of an ordinary worker, who had limited knowledge of Decedent's working conditions, supports a finding of longstanding and continuous asbestos exposure. Thus, it contends that the evidence is insufficient to support the determination of the WCJ.

 Substantial evidence must be both competent and sufficient. In determining whether the testimony of Mr. Grier was properly admitted (competent) and able to form the basis of the finding of the WCJ that Decedent had long-term workplace asbestos exposure (sufficient), we begin by examining the text of Pa.R.E. 701, which provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness, helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.[6]

6. Appellant does not argue that an expert subject to the strictures of Rule 702 must provide evidence of an asbestos presence in the workplace, and we decline to comment on this aspect of opinion testimony.

Rule 701 contemplates admission of lay opinions rationally based on personal knowledge that are helpful to the trier of fact. At common law, witnesses not qualifying as experts were generally permitted to testify regarding those things that they had "[seen], heard, felt, tasted, smelled," or done. *Lewis v. Mellor*, 259 Pa.Super. 509, 393 A.2d 941, 946 (1978). This Court, from very early in Commonwealth history, interpreted the rules of evidence to permit individuals not qualified as experts, but possessing experience or specialized knowledge, to testify about technical matters that might have been thought to be within the exclusive province of experts. *See, e.g., Irwin v. Bear*, 4 Yeates 262 (Pa.1805) (opinions of settlers with knowledge of early names of streams admissible in land case); *Forbes v. Caruthers*, 3 Yeates 527 (Pa.1803) (specialized knowledge personal to witness). *See also Graham v. Pennsylvania Co.*, 139 Pa. 149, 21 A. 151 (1891) (holding that the witnesses must have specialized knowledge that will assist the jurors, and that the knowledge must be personal to them); *Commonwealth v. Eyler*, 217 Pa. 512, 66 A. 746 (1907) (intoxication); *Davis v. Southern Surety Co.*, 302 Pa. 21, 153 A. 119 (1930) (value of construction equipment), *overruled on other grounds, Commonwealth ex rel. Schnader v. Great American Indemnity Co.*, 312 Pa. 183, 167 A. 793 (1933); *Workmen's Compensation Appeal Bd. (Pryce) v. Bethlehem Mines Corp.*, 22 Pa.Cmwlth.437, 349 A.2d 529 (1975) (apparent physical condition). Where, however, a party proffers a witness expressing an opinion on matters such as the presence of asbestos in the workplace, the trial court must be rigorous in assuring that the lay witness satisfies the strictures of Rule 701. In particular, the proponent of technical lay opinion testimony must show that the testimony is based on sufficient personal experience or the specialized knowledge of the witness. Pa.R.E. 602. *See, e.g., Smith v. Clark*, 411 Pa. 142, 190 A.2d 441 (1963) (police officer permitted to testify that the cause of the accident was the failure to react to the curve because of intoxication; Court said testimony was speculative because the officer did not view the accident). Without meeting the requirements of Rule 701, the lay opinion is not

"rationally based on the perception of the witness" or truly "helpful" to the jury.

■ The Supreme Court of Tennessee advanced a realistic appraisal of expert and lay testimony when it stated: "The distinction between an expert and a non-expert witness is that a non-expert witness's testimony results from a process of reasoning familiar in everyday life and an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field." *State v. Brown*, 836 S.W.2d 530, 549 (Tenn.1992). At law, every person is competent to be a witness unless otherwise provided by statute or by the Rules of Evidence. Pa.R.E. 601. However, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Pa.R.E. 602. Therefore, if the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences that are within the personal knowledge of the witness and can assist the trier of fact to obtain a clear understanding or determination of a fact in issue. Pa.R.E. 701. In the instant matter, Claimant was required to show that Decedent was: (a) exposed to asbestos, which is an acknowledged workplace hazard within the Occupational Disease Act; (b) in the course of his employment; and (c) that asbestos-related disease formed a significant contributing cause of his death. Thus, proof of exposure to asbestos was the critical element of her case.

In concluding that Claimant met her burden of proving long-term asbestos exposure, the Commonwealth Court relied on *Witco–Kendall Co. v. Workmen's Compensation Appeal Bd. (Adams)*, 127 Pa.Cmwlth. 509, 562 A.2d 397 (1989), *petition for allowance of appeal denied*, 525 Pa. 652, 581 A.2d 577 (1990). There, the employer conceded the presence of asbestos until the plant was abated in 1974. The issue in *Witco–Kendall* was not whether the claimant had been exposed to an asbestos hazard, but whether his Claim Petition was timely. Further testimony demonstrated that the claimant handled and cut gaskets containing asbestos after the plant had been

abated until his last day of work in 1983. *Id.* at 398. Claimant was diagnosed with asbestosis, filed a claim petition, and was deemed totally and permanently disabled. The Commonwealth Court concluded as a sub-issue that claimant's failure to identify the asbestos in his workplace through expert testimony was not fatal to his claim [7] and ultimately rendered a decision on the merits that the Claim Petition was timely. The Commonwealth Court majority in the case *sub judice* analogized that the testimony of Mr. Grier was akin to that of the claimant in *Witco–Kendall.* It concluded that, because the substantial evidence burden is not high in workers' compensation proceedings, the testimony of Mr. Grier coupled with that of Dr. Laman was both competent and sufficient to support an award.

 Judge Pellegrini dissented, concluding that there was no substantial evidence to support the findings of the WCJ. We agree. *Witco–Kendall* is eminently distinguishable. The employer in *Witco–Kendall* conceded the presence of asbestos in the plant at least up until 1974; the claimant there was testifying from first-hand knowledge of his working conditions that he was exposed to asbestos on a continuing basis; and also, significantly, the claimant there had been diagnosed with asbestosis. In the present matter, no witness with first-

7. In the instant matter, the Commonwealth Court, relying on *Witco–Kendall,* observed that expert testimony is not required to establish the presence of asbestos in the workplace and that the testimony of the claimant, alone, can establish exposure. My esteemed colleague does not object to this "flexible application of the substantial evidence standard," (Concurring Opinion, Saylor, J. at 489, 861 A.2d at 950), even though he notes that "in those instances where the Commonwealth Court has accepted lay testimony on the issue of exposure, the evidence has been more positive than that presented here." *Id.* at 490, 861 A.2d at 950. However, this is precisely the issue that we address. Further, there is justification for permitting the **claimant** to testify as to workplace exposure to hazardous substances that have affected his or her health. But such justification has not been extended previously to other employees who do not possess first hand knowledge.

My other esteemed colleague appears to believe that Mr. Grier was competent to testify as to the presence of asbestos because "such testimony was based on his personal knowledge and firsthand experience." (Concurring Opinion, Nigro, J., at 487, 861 A.2d at 949). However, Mr. Grier admitted that he did not have firsthand knowledge of the presence of asbestos in his workplace. *See* note 8, *infra.*

hand knowledge testified that there was asbestos in the workplace. Mr. Grier simply testified that he saw Decedent near a dusty, cottony material that he was unable to identify.[8] No witness with first-hand knowledge testified that Decedent had asbestos-related disease, nor did any of Decedent's records state that he had spoken of asbestos exposure to any treating physician. There simply is a lack of substantial evidence, either competent or sufficient, to support a finding that Decedent's death was caused, in substantial part, by asbestos-related disease. Contrast the lay opinion testimony in the instant matter with that in *Harahan v. AC & S, Inc.*, 816 A.2d 296 (Pa.Super.2003). There a widow brought a products liability action against a manufacturer of pipe sealant and roofing cement alleging that the death of her husband from mesothelioma [9] was the result of asbestos inhalation during his twenty-seven-year employment as a pipe fitter. The presence of asbestos in the workplace was established by the lay opinion testimony of two co-workers. One worker testified that the sealant containing asbestos went on as a clear liquid but created dust when it dried. Dust came from around the pipes, from their clothes, from the air, and from their tools. He indicated that he knew that the product contained asbestos because "[i]t said asbestos on the cans . . . ." *Id.* at 298. When asked how close he worked to the decedent when dust was created by the use of the sealant, he replied "no further than an arm's length away." *Id.* He further testified as to the product's regularity of use, the frequency of inhalation, the

8. It cannot be disputed that Mr. Grier was competent to testify as to the dusty condition of the Bridgeville and Pittsburgh plants, and the presence of cottony material on the pipes and the floor. He personally observed these things. However, Mr. Grier's testimony, in which he stated that the material he observed in the plants was asbestos but was not, *by his own admission*, based on any personal knowledge. *See* Reproduced Record (R.R.) at 69–70a ("I just—as you call it hearsay, went by what people said . . . .").

9. Mesothelioma is a cancer of the mesothelial tissue surrounding the lung, which is a rare disease with the exception of those exposed to asbestos. It is the most serious of the asbestos-related cancers and the most identifiable as having an asbestos exposure causation. *Sporio v. Workers' Compensation Appeal Bd. (Songer Constr.)*, 553 Pa.44, 717 A.2d 525, 529 (1998).

lack of respiratory protection, and, unlike the instant matter, credibly established the presence of asbestos in the workplace through personal knowledge.

The findings of the WCJ are further undermined by the testimony of Dr. Laman, Claimant's medical expert, who testified that he based his report on the assumption that Decedent, because he worked in a steel mill, had been exposed to asbestos. The Commonwealth Court took what is tantamount to judicial notice of the presence of asbestos in steel mills in footnote ten of its Opinion by citing four cases involving "the repeated and common existence of asbestos in the steel industry . . . ." *Gibson v. Workers' Compensation Appeal Bd. (Armco Stainless & Alloy Products)*, No. 1860 C.D. 2002, slip op. at 8 n. 10 (Pa.Cmwlth. filed May 8, 2003).

Pursuant to the Commonwealth's Administrative Agency Law: "Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received." 2 Pa.C.S. § 505. This statutory maxim has been correctly interpreted to mandate a relaxation of the strict rules of evidence in hearings and proceedings, such as those held by a WCJ. However, within the administrative forum there has not been a total abandonment of all rules of evidence. We note that, in general, questions concerning the admission and exclusion of evidence are within the sound discretion of the tribunal and are not to be reversed on appeal absent a finding of an abuse of discretion. *Morrison v. Dept. of Public Welfare, Office of Mental Health*, 538 Pa. 122, 646 A.2d 565, 572 (1994). Although the Workers' Compensation Act [10] provides for a relaxation of the rules of evidence, this relaxation cannot include permitting an untrained person to identify a workplace substance without personal knowledge or specialized training. This Court cited, with approval, the holding of the Commonwealth Court in other administrative proceedings to the effect that the "hearsay rule is not a mere technical rule of evidence, but a fundamental rule of law which ought to be followed by

10. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

agencies when *facts crucial to the issue* are sought to be placed on the record and an objection is made thereto." *A.Y. v. Allegheny Co. Children & Youth Svcs.*, 537 Pa. 116, 641 A.2d 1148, 1151 (1994) (emphasis in original) (citations omitted). We believe that another fundamental rule of law is that witnesses must have first-hand knowledge of the subject on which they are testifying for that testimony to be admissible. Stated succinctly, evidentiary Rules 602, 701, and 702 are applicable to agency proceedings in general, including workers' compensation proceedings.

Relying on cross-examination to expose the weaknesses of lay opinion testimony does not suffice to erase the error of improperly admitted evidence. Total reliance on cross-examination permits the party propounding the evidence to introduce it generally in a conclusory manner without relation to the record and casts the entire burden of disqualifying it on the opponent. "This is contrary to the usual practice of allocating to the proponent of evidence, as the party with the laboring oar, the duty of laying a logically understandable foundation." *Kozak v. Struth*, 515 Pa. 554, 531 A.2d 420, 423 (1987).

### CONCLUSION

The admissibility of lay opinion testimony is not without limit. Given the standard we articulate today for the admission of lay opinion evidence of a technical nature, we conclude that the WCJ failed to examine with sufficient rigor whether the testimony in question was informed by sufficient experience or specialized knowledge. More particularly, in order to satisfy the "rationally derived" and helpfulness standards of Rule 701, Claimant needed to demonstrate that the witness possessed sufficient experience or specialized knowledge that qualified him to offer a technical opinion regarding the presence of asbestos in the workplace. While a lay witness could acquire this additional insight by either formal education or practical experience, it appears the witness at issue simply possessed neither.

Actual knowledge and observation on the part of the lay witness are the essential bases for the reception of the opinion. Pursuant to Rule 602, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Thus, we must agree with the Board that the record is devoid of substantial evidence to support a finding of long-term asbestos exposure in the workplace. Accordingly, we reverse the order of the Commonwealth Court.

Justice NIGRO files a concurring opinion in which Chief Justice CAPPY joins.

Justice SAYLOR files a concurring opinion.

Justice NIGRO, concurring.

I respectfully disagree with the majority that Gregory L. Grier was not competent to testify that he observed materials that he believed to be asbestos when he was working at Appellant Armco Stainless & Alloy Products' Pittsburgh and Bridgeville steel plants with Patric Gibson.[1] As the majority notes, according to the rules of evidence, a witness is competent to testify about matters of which he has personal knowledge or firsthand experience. *See* Pa.R.E. 602. In addition, lay witnesses may offer "testimony in the form of opinions or inferences which are rationally based on the perception of the witness, helpful to [obtaining] a clear understanding of the witness' testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Pa.R.E. 701. Finally, we must always keep in mind that the rules of evidence do not need to be strictly applied in workers' compensation proceedings, but rather, "all relevant evidence of reasonably probative value may be received." 2 Pa.C.S. § 505; *see also Rox Coal*

---

1. Notably, Appellant has never contended that Mr. Grier was not competent to testify regarding Mr. Gibson's exposure to asbestos. Thus, it is questionable whether this Court should even be considering this issue. Nevertheless, because the majority addresses it and comes to a conclusion with which I disagree, I feel compelled to speak on this issue.

Co. v. Workers' Compensation Appeal Bd. (Snizaski), 570 Pa.60, 807 A.2d 906, 915 (2002); Nabisco Brands, Inc. v. Workers' Compensation Appeal Bd. (Tropello), 763 A.2d 555, 559 (Pa.Cmwlth.2000).

In the instant case, a material fact to be decided by the workers' compensation judge was whether Mr. Gibson had been exposed to asbestos material when he worked in Appellant's Pittsburgh and Bridgeville steel plants. To establish this fact, Claimant presented Mr. Grier's deposition testimony. Mr. Grier testified that when he was working in Appellant's Pittsburgh steel plant between approximately 1981 and 1987 he saw Mr. Gibson on a daily basis. See R.R. 32a, 34a. He further stated that during this time he observed Mr. Gibson working with a dark gray, heavy, dusty, and cotton-type material on the water and steam pipes in the plant, which he believed was asbestos. See id. at 39a–44a. Finally, Mr. Grier testified that after he started working at Appellants' Bridgeville steel plant in the late 1980s, Mr. Gibson joined his crew and again they worked around a dark gray and dusty insulation material that he believed to be asbestos. See id. at 46a–51a.

In my view, Mr. Grier was clearly competent to testify about Mr. Gibson's exposure to the above materials because such testimony was based on his personal knowledge and firsthand experiences. Moreover, I believe that Mr. Grier was competent to testify that he believed that the materials contained asbestos because such a belief was plainly a rational one based on his observations of the materials, which, as he explained, were dark gray, dusty, and used for insulation. See Camp Construction Corp. v. Lumber Products Co., 311 Pa.Super. 381, 457 A.2d 937, 941 (1983) (lay witnesses were competent to express their opinions regarding the fitness of a piece of wood because their opinions were rationally based on what they observed). While I acknowledge that Mr. Grier could not definitively identify the materials as asbestos based on his experiences and knowledge, I do not believe that such a fact renders his testimony incompetent and inadmissible, particularly in a workers' compensation hearing where the rules of

evidence are relaxed. Rather, in my opinion, Mr. Grier's inability to conclusively identify the materials as asbestos was simply an area for Appellant to explore on cross-examination and for the judge to weigh in assessing Mr. Grier's credibility and ultimately, the sufficiency of the evidence presented.

I therefore disagree with the majority that Mr. Grier's testimony was inadmissible. Nevertheless, like the majority, I would find that the evidence presented in the case, including the testimony of Mr. Grier, was insufficient to establish that Mr. Gibson was exposed to asbestos when he worked for Appellant. Indeed, the only two witnesses who offered testimony about Mr. Gibson's possible exposure to asbestos were Mr. Grier and David Laman, M.D., and neither of those witnesses could conclusively testify that Mr. Gibson was exposed to asbestos materials while working for Appellant. Specifically, as noted above, Mr. Grier testified that Mr. Gibson worked with material that he thought contained asbestos, but he was unable to confirm whether the material actually contained asbestos. Similarly, although Dr. Laman opined that Mr. Gibson's lung cancer was a result of his exposure to asbestos while working for Appellant, he admitted that he did not know for certain whether Mr. Gibson was indeed exposed to asbestos during such times. Under these circumstances, I must agree with the majority's ultimate conclusion that the evidence was insufficient to support a finding that Mr. Gibson was exposed to asbestos while working for Appellant. *See Pennsylvania Labor Relations Bd. v. Elk Motor Sales Co.*, 388 Pa. 173, 130 A.2d 501, 505 (1957) (to constitute substantial evidence, the evidence must do more than "create a suspicion of the existence of the fact to be established").

Chief Justice CAPPY joins.

Justice SAYLOR, concurring.

I agree with the majority that the record in this particular case does not contain substantial evidence to support the WCJ's finding that Decedent had longstanding and continuous

exposure to asbestos while working for Employer. I am not averse, however, to the Commonwealth Court's approach of treating the exposure issue as a factual one, or to its flexible application of the substantial evidence standard in this regard. *See Gibson v. WCAB (Armco Stainless & Alloy Products)*, No. 1860 C.D. 2002, *op.* at ____, 861 A.2d 944 (Pa.Cmwlth. May 8, 2003) (*en banc*) (observing that Commonwealth Court precedent holds "that the burden of proof for a claimant attempting to show asbestos exposure is not overly demanding, that scientific evidence to prove the existence of an asbestos hazard is not required under the Act, that a claimant's failure to identify the dust to which he was exposed as asbestos is not fatal to a claim for benefits and that a claimant's testimony alone can support a finding that asbestos exposure existed"). Such approach is consistent with prevalence of the use of asbestos in certain industries, as well as the inherent difficulties of proving the presence of asbestos, which most industries have long since remediated. *Cf.* 77 P.S. § 413 (permitting a presumption that an occupational disease arose during the course of employment if the disability occurred at or immediately after employment in an industry in which occupational disease is a hazard). That said, in those instances where the Commonwealth Court has accepted lay testimony on the issue of exposure, the evidence has been more positive than that presented here. *See, e.g., Gray v. WCAB (Pittsburgh Bd. of Ed.)*, 657 A.2d 77, 80–81 (Pa.Cmwlth.1995) (deeming the evidence sufficient where claimant's testimony to chemical exposure was corroborated by a co-worker and an industrial hygienist); *Witco–Kendall Co. v. WCAB (Adams)*, 127 Pa. Cmwlth. 509, 511, 518, 562 A.2d 397, 398, 401 (1989) (concluding that claimant's testimony to asbestos exposure was sufficient where he had been diagnosed with asbestosis and the employer admitted that claimant had been exposed).