IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alice Berger, : 
               Petitioner : 
                : No. 16 C.D. 2015
           v. : 
                : Submitted: June 12, 2015
Unemployment Compensation : 
Board of Review, : 
               Respondent : 


BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
              HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                      FILED: September 24, 2015

Alice Berger (Claimant) petitions for review of the December 16, 2014 order of the Unemployment Compensation Board of Review (Board), which reversed a referee's determination and held that Claimant was ineligible for benefits pursuant to section 402(e) of the Unemployment Compensation Law (Law).[1] We affirm.

Claimant was employed as an equipment operator with the Pennsylvania Department of Transportation (Employer) from September 19, 1991, to August 12, 2014. Employer discharged Claimant for three work-rule violations: theft, misappropriation, or conversion of Employer's or anyone else's property; leaving

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which her unemployment is due to her discharge or temporary suspension from work for willful misconduct connected with her work.

Employer's premises during working hours without permission from the supervisor; and unauthorized use of Employer's tools, equipment, reusable material, property, facilities, or supplies.

The local service center determined that Claimant committed the alleged acts without good cause, and, therefore, she was ineligible for benefits under section 402(e) of the Law. Claimant appealed, and a referee held a hearing on October 7, 2014.

Joe Rhodomoyer, Employer's human resources representative, testified that Claimant used Employer's truck to haul dirt from a worksite to her property during work hours on June 24 and 25, 2014, without approval. He stated that Employer's GPS tracking system showed that Claimant never went to the dumpsite, where she was supposed to take the load of dirt, but instead went to her home. (Notes of Testimony (N.T.) at 10-11.)

Rhodomoyer further testified that a violation of Employer's work rule related to theft, misappropriation, or conversion of Employer's property results in immediate termination. He added that Employer has discretion to discharge an employee who leaves Employer's premises during working hours without permission and uses Employer's property in an unauthorized manner. (N.T. at 15.)

Frederick Farleigh, Employer's Highway Foreman II, testified that while he was working on another site he saw Claimant driving one of Employer's trucks on the highway with a load of topsoil. Farleigh noted that Claimant was driving in the opposite direction of her dumpsite. Farleigh said that he reported the incident to his supervisor, Shawn Campanaro, and told Campanaro that Claimant was taking the dirt to her house. Farleigh stated that, after work that day, he drove past Claimant's house per Campanaro's instruction. Farleigh acknowledged that he had been suspended for

2

a day and was required to take a class based on a sexual harassment complaint filed against him by Claimant and requested to not have her on his crew. (N.T. at 23-28.)

Campanaro testified that he left the office on June 25, 2014, to look for Claimant after he received the phone call from Farleigh. Campanaro said that he went directly to Claimant's dumpsite, waited for ten or fifteen minutes, and then drove to Claimant's house and saw tire marks from a truck that led to Claimant's driveway. Campanaro also stated that the GPS tracking system showed that Claimant was at her house with Employer's truck on June 24, 2014. Campanaro acknowledged that he observed a tarp on Claimant's property but that he never confirmed what was under the tarp. However, he said that there were two fresh piles of dirt beside an outhouse on the property. (N.T. at 29-30, 33-34, 39.)

Claimant testified that she took the loads of dirt to her directed dumpsite on both June 24 and 25, 2014. Claimant said that she did not remember driving the truck home on June 24. However, Claimant acknowledged that she admitted to doing so at a pre-disciplinary conference. (N.T. at 45, 57, 70-71.)

Claimant stated that, on June 25, 2014, she took a route past Farleigh's worksite because she missed turning onto the road that would have been the quicker route. She said that, on June 25, she dumped the load of dirt off at the dumpsite and rushed home because she was not feeling well due to her diverticulosis and chronic Lyme disease. Claimant noted that the blood pressure medication and antibiotic that she was taking at the time affected her digestive system. Claimant further testified that she could not find a restroom, lost her bowel function, and had to go home in order to change clothes. Claimant also stated that, in accordance with Employer's instructions to keep parked trucks out of public view, she had backed into the driveway so that no one could see her truck from the road. Claimant said that her

3

supervisors were aware that workers take the trucks home in order to use the restroom. (N.T. at 48-50, 69.)

Claimant testified that her supervisor attempted to contact her on the radio but that she never received his call. She stated that the radios do not work a lot of the time and that they did not work at the dumpsite. Claimant also noted that her supervisor never attempted to call her on her cell phone, which is a proper means of communication for supervisors and employees. (N.T. at 54-55.)

Claimant stated that she had dirt on her property that came from Employer three or four years earlier. She said that she had followed Employer's proper procedure in order to receive that dirt. Claimant testified that she kept a log-splitter under the tarp where Employer accused her of dumping the dirt. Claimant testified that she did not take dirt home and dump it on her property on either June 24 or 25, 2014. Claimant stated that she did not break any rules by driving the truck to her house, and she said that Employer never told her that she could not drive the truck to her house without a supervisor's approval. (N.T. at 56, 58, 60.)

The referee found that Claimant did not leave Employer's premises during working hours without permission because Claimant's decision to drive home was prompted by a medical emergency and she had gone home previously during the day without prior permission. The referee also found that Claimant was unaware that she needed prior permission under the circumstances. The referee further found Claimant's testimony credible and resolved all conflicts in testimony in Claimant's favor. The referee concluded that Employer failed to meet its burden of proving willful misconduct. Accordingly, the referee determined that Claimant was not ineligible for benefits under section 402(e) of the Law. Employer appealed to the Board.

4

The Board found that Employer maintains a set of written policies that define minor and major rule violations, of which Claimant was aware. (Board's Findings of Fact Nos. 9-10.) The Board further found that on June 24 and 25, 2014, Claimant picked up loads of dirt from the worksite but did not take them to the dumpsite; instead, she drove the truck to her home and dumped the dirt on her property. (Board's Findings of Fact Nos. 3-4, 6-7.)

The Board noted Claimant's testimony that she drove the truck home because she had an "accident" as a result of a medical condition and she had to use the bathroom and change her clothes. (Board's Finding of Fact No. 5.) However, the Board found that Claimant's decision to drive to her home on June 25, 2014, was not prompted by a medical emergency and that Claimant did not have Employer's permission to leave its premises, even though Claimant knew or should have known that permission was needed. (Board's Findings of Fact Nos. 12-14.) The Board further found that Claimant did not inform her supervisor that she had to go home due to a medical emergency.[2] (Board's Finding of Fact No. 8.)

---

[2] The Board made the following findings of fact:

> 1.) [Claimant] was last employed with the Commonwealth of Pennsylvania, Department of Transportation as an equipment operator B, at a final rate of pay of $23.36 per hour from September 19, 1991 and her last day at work was August 12, 2014.
> 2.) On June 24 and June 25, 2014, [Claimant] was operating a dump truck with which she was to be hauling loads of dirt from a worksite to a dumpsite.
> 3.) On June 24, 2014, [Claimant] left the worksite and drove her truck to her home rather than going to the dumpsite.
> 4.) On June 25, 2014, [Claimant] again drove her truck home with a load of dirt from the worksite that she dumped on her property.

**(Footnote continued on next page…)**

5

**(continued…)**

5.) [Claimant] alleged that she took the truck home because she had an "accident" as a result of a medical condition and she had to use the bathroom and change her clothes.

6.) On both days, [Claimant] had a load of dirt in the truck at the time that she went home and dumped the dirt on her property.

7.) [Claimant] did not go to the dumpsite at all on June 24 or June 25, 2014, but dumped the dirt on her property.

8.) [Claimant] did not inform her supervisor that she had to go home due to a medical emergency on either date.

9.) [Employer] maintains a set of written policies that define minor rule violations and major rule violations and specify some major offenses that may lead to immediate termination.

10.) [Claimant] was aware of [Employer's] policy rules.

11.) After August 12, 2014, [Employer] suspended, and subsequently discharged [Claimant], informing [Claimant] that the reasons for her removal were:

    1.) Violation of major offense #1 – theft[,] misappropriation or conversion of Department or anyone else's property,

    2.) Violation of major working rule #6, leaving Department premises during working hours without permission from the supervisor, and

    3.) Violation of major working rule #19, unauthorized use of Department tools, equipment, reusable material, property, facilities or supplies.

12.) [Claimant's] decision to drive to her home on June 25, 2014, was not prompted by a medical emergency.

13.) [Claimant] was or should have been aware that she needed prior permission to go home without permission.

14.) [Claimant] did leave "Department premises" during working hours without permission.

15.) [Claimant] did misappropriate [Employer's] dirt and use [Employer's] dump truck without permission.

16.) [Claimant] previously used [Employer's] proper procedure to get a load of dirt from work.

(Board's Findings of Fact Nos. 1-16.)

6

The Board resolved the conflicts in testimony in favor of Employer and found Employer's witnesses to be credible. The Board determined that Employer met its burden of proving that Claimant was discharged for willful misconduct in connection with her work and that Claimant did not demonstrate that she had good cause for her actions. Thus, the Board determined that Claimant was ineligible for benefits under section 402(e) of the Law.

On appeal to this Court,[3] Claimant argues that: (1) the Board's findings and determination are not supported by substantial evidence; and (2) the Board erred in excluding Claimant's co-worker's statement that Claimant had visited the dumpsite on June 24 and 25, 2014.

Pursuant to section 402(e) of the Law, an employee is not eligible for benefits if he is discharged from his employment for willful misconduct connected with his work. 43 P.S. §802(e). The employer bears the burden of proving that the employee's actions rose to the level of willful misconduct. *Stauffer v. Unemployment Compensation Board of Review*, 455 A.2d 300, 301 (Pa. Cmwlth. 1983). Whether an employee's actions constitute willful misconduct is a question of law subject to review by this Court. *Noland v. Unemployment Compensation Board of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981). While the Law does not define willful misconduct, our courts have interpreted it as including: (1) the wanton or willful disregard of the employer's interests; (2) the deliberate violation of the employer's rules; (3) the disregard of the standards of behavior which an employer can rightfully expect from an employee; or (4) negligence which manifests culpability, wrongful

---

[3] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704.

intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations. *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999).

Thus, a violation of an employer's work rules and policies may constitute willful misconduct. *Id.* Where, as here, a claimant is discharged for violation of a work rule or policy, the employer must establish both the existence of a reasonable work rule and its violation. *Webb v. Unemployment Compensation Board of Review*, 670 A.2d 1212, 1214 (Pa. Cmwlth. 1996). Once an employer establishes that a claimant violated a reasonable work rule, the burden then shifts to the claimant to establish that she had good cause to violate the rule or that the rule was unreasonable, and thus the denial of unemployment benefits is improper. *Roberts v. Unemployment Compensation Board of Review*, 977 A.2d 12, 17 (Pa. Cmwlth. 2009). Good cause for violating a work rule or standard is established where the action of the employee is justified or reasonable under the circumstances. *Id.* at 17.

In addition, the Board is the ultimate finder of fact in unemployment compensation proceedings. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1385 (Pa. 1985). Thus, issues of credibility are for the Board, which may either accept or reject a witness' testimony whether or not it is corroborated by other evidence of record. *Chamoun v. Unemployment Compensation Board of Review*, 542 A.2d 207, 208 (Pa. Cmwlth. 1988). The Board's findings of fact are conclusive upon review provided that the record, taken as a whole, contains substantial evidence to support them. *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 831 (Pa. 1977). This Court must examine the evidence in the light most favorable to the party who prevailed before the Board and give that party the benefit of all inferences that can be logically and reasonably drawn therefrom. *Id.* The fact that a

8

claimant may have "given a different version of events, or . . . might view the testimony differently than the Board, is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v. Unemployment Compensation Board of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994).

In this case, the Board credited the testimony of Employer's witnesses. Specifically, Employer's witnesses testified that Employer maintained a set of written policies defining rule violations; Claimant was aware of these policies; Claimant dumped dirt on her property without authorization; there were two fresh piles of dirt on Claimant's property and tire marks from a truck leading to Claimant's driveway on June 25, 2014; and Employer's GPS tracking system confirmed that Claimant drove Employer's truck to her house, and not the dumpsite, on June 24 and 25, 2014. (N.T. at 10-11, 15, 29, 33, 39.) Thus, we conclude that the testimony of Employer's witnesses constitutes substantial evidence to support the Board's findings.

Because Employer established that Claimant violated its reasonable work policy, Claimant had the burden of proving that she had good cause for her actions. However, the Board discredited Claimant's testimony, and we will not disturb the Board's credibility determinations on appeal. *Taylor*. Therefore, the Board did not err in determining that Claimant failed to meet her burden of proving that she had good cause for violating Employer's reasonable work policy.

Claimant also argues that the Board erred in excluding her co-worker's statement that Claimant had visited the dumpsite on June 24 and 25, 2014. The traditional rules of evidence are relaxed in administrative hearings and proceedings, and all relevant evidence of reasonably probative value may be received. Section 505 of the Administrative Agency Law, 2 Pa.C.S. §505; *Gibson v. Workers' Compensation Appeal Board (Armco Stainless & Alloy Products)*, 861 A.2d 938, 947

9

(Pa. 2004). Although the evidentiary rules are relaxed, they are not abandoned. *Id.* Further, questions concerning the admission and exclusion of evidence are generally within the sound discretion of the administrative tribunal and are not to be reversed on appeal absent a finding of an abuse of discretion. *Id.* "Hearsay" is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). "Hearsay evidence, [p]roperly objected to, is not competent evidence to support a finding of the Board." *Walker v. Unemployment Compensation Board of Review*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976).

Here, Employer objected to the handwritten statement from Claimant's co-worker stating that Claimant went to the dumpsite on June 24 and 25, 2014, as hearsay, and the objection was sustained. Claimant asserts that this statement is not being admitted for the truth of the matter asserted but to demonstrate that Employer had notice to inquire into the validity of the co-worker's statement. However, the handwritten statement was determined to be hearsay. Because Claimant essentially sought to admit the statement to prove that she went to the dumpsite on June 24 and 25, 2015, and the declarant did not testify at the hearing, we cannot find that the Board abused its discretion in not considering the co-worker's statement.[4] *Gibson*.

---

[4] Claimant further asserts that the Board erred in issuing a decision without affording her an opportunity to be heard or explaining the bases for its holdings. However, the Board issued a decision explaining its findings. We further note that Claimant's counsel was aware of the appeal, entered her appearance before the Board, and requested a copy of the transcript from the Board, which was mailed by the Board on November 24, 2014. (Certified Record Item Nos. 14, 16.) Claimant's counsel never requested a briefing schedule. Claimant was given the *opportunity* to be heard, and, thus, Claimant's argument has no merit.

Accordingly, we affirm.[5]


_____

PATRICIA A. McCULLOUGH, Judge

---

[5] Based on our disposition, we need not address Claimant's arguments that the Board erred in relying on computer-generated screenshots and Google Maps images of undetermined dates and origins as evidence and that the record contains substantial evidence that her termination was the result of discrimination and retaliation based on her harassment complaints against her male supervisors. Moreover, we note that none of the Board's findings were based on the computer-generated screenshots and Google Maps images.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alice Berger,                                          :
                    Petitioner                         :
                                                       :    No.  16 C.D. 2015
          v.                                           :
                                                       :
Unemployment Compensation                              :
Board of Review,                                       :
                    Respondent                         :


# ***ORDER***


          AND NOW, this 24th day of September, 2015, the December 16, 2014

order of the Unemployment Compensation Board of Review is affirmed.


                                        _____
                                        PATRICIA A. McCULLOUGH, Judge