# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wise Foods, Inc.,            :
          Petitioner       :
                                :
         v.              :     No. 1887 C.D. 2017
                                :     SUBMITTED: May 25, 2018
Workers' Compensation Appeal      :
Board (Carvell),                :
          Respondent    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**            **FILED: November 15, 2018**

Wise Foods, Inc. (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the Workers' Compensation Judge (WCJ) granting the claim petition of Shirl L. Carvell (Claimant). The parties have stipulated that Claimant is unable to do her time-of-injury job due to breathing problems, but Employer continues to dispute that her impairment is work-related. (WCJ's November 27, 2016, Decision, Finding of Fact (F.F.) No. 115.) We affirm.[1]

Claimant worked for Employer for over ten years as a conveyor/seasoning attendant "putting seasoning on chips, taking out trash, and performing cleaning activities . . . ." (*Id.*, No. 6.) During that time, the roof of Employer's factory leaked such that the employees had to cover the machines with plastic and there was a problem with sewage coming through the floor and the water

---

[1] In March 2018, this Court entered an order denying Employer's application for supersedeas.

fountains.  (*Id.*, No. 25.)  In addition, there was "black stuff" all over the machines, the conveyor belts, and the floors.  (*Id.*, No. 7.)  Claimant believed that substance to be mold, which the accepted evidence of record supports.  At any rate, Employer assigned Claimant and other employees the task of cleaning mold from the aforementioned surfaces.  (*Id.*, No. 21.)  Claimant cleaned for a few months, at times every other weekend, and worked for five to eight hours per day when she did so.  (*Id.*, No. 7.)  She cleaned without a mask and used a scraper or a knife.  (*Id.*)

In late 2012 and early 2013, Claimant began experiencing a lot of pain in her neck and breathing and coughing issues.  (*Id.*, No. 8.)  Before that time, she had never experienced such problems.  (*Id.*, Nos. 19 and 116.)  She was hospitalized several times and even spent three days in the intensive care unit (ICU) at Lehigh Valley Hospital.  (*Id.*, Nos. 9, 10, 12, 14, and 16.)  In addition, she received short-term disability benefits through her union for twenty-six weeks, from May to November 2014, inclusive.   (*Id.*, Nos. 20 and 115.)

In her claim petition, Claimant alleged that she sustained a work-related pulmonary injury as of January 15, 2013, due to cleaning mold.  In support, Claimant testified and presented the deposition testimony of Jonathan Hertz, M.D., board-certified in internal medicine and pulmonary disease.  Having examined Claimant on multiple occasions and performed his own testing, Dr. Hertz acknowledged that there was an aspect of her breathing problems that was due to weight-related restrictive airways disease.  Nonetheless, he opined that her primary disabling condition was occupational asthma caused by exposure to mold at the workplace. (*Id.*, Nos. 29, 38, and 117.)  In addition to his medical assessment, Dr. Hertz relied upon a National Institute for Occupational Safety and Health (NIOSH) report pertaining to conditions at Employer's factory and Claimant's representations

2

regarding water problems at her workplace. The WCJ accepted both witnesses' testimony as credible. (*Id.*, Nos. 116 and 117.)

Employer presented the deposition testimony of John Cohn, M.D., who opined that Claimant's pulmonary tests, the continuance of her symptoms when not at work, and obesity supported a diagnosis of restrictive airways disease and not asthmatic obstructive airways disease. (*Id.*, No. 100.) The WCJ rejected his opinion, reasoning, *inter alia*, that he failed to offer an alternate diagnosis for Claimant's breathing condition despite her hospitalizations. (*Id.*, No. 118.) Employer also presented the testimony of certified industrial hygienist John Hertzler, who conducted a mold assessment of Employer's plant and issued an April 2013 report thereafter. In rejecting his testimony, the WCJ observed that the witness acknowledged that he had only tested the air quality at Employer's plant once and had never taken samples before or after his April 2013 testing. In addition, the WCJ noted that the witness acknowledged that he had no idea what, if any, cleaning took place at the facility between January 2013 (date of alleged injury) and April 2013 (date of his mold sampling study). (*Id.*, No. 119.)

In granting the claim petition, the WCJ relied upon the testimony of Claimant and Dr. Hertz.[2] (Conclusion of Law No. 2.) Specifically, the WCJ concluded that Claimant proved that she sustained a work-related injury in the nature of occupational asthma as of January 15, 2013, and that her period of total disability commenced on May 23, 2014, when she was hospitalized at Lehigh Valley Hospital

---

[2] The fact that a party may have produced witnesses who gave a different version of the events, or that the party might view the testimony differently from the fact finder does not constitute grounds for reversal as long as substantial evidence supports the findings. *Tapco, Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). In addition, "determinations as to witness credibility and evidentiary weight are within the exclusive province of the WCJ and are not subject to appellate review." *Joy Global, Inc. v. Workers' Comp. Appeal Bd. (Hogue)*, 876 A.2d 1098, 1103 (Pa. Cmwlth. 2005).

and when Dr. Hertz indicated that he would have taken her out of work. (*Id.*, Nos. 120 and 121.) The Board affirmed and Employer's petition for review followed.

A claimant bears the burden of establishing his or her right to compensation and all of the elements necessary to support an award of benefits, including proof that he or she sustained a compensable injury in the course and scope of employment and that he or she is disabled as a result of that injury. *Milner v. Workers' Comp. Appeal Bd. (Main Line Endoscopy Ctr.)*, 995 A.2d 492, 496 (Pa. Cmwlth. 2010). Section 301(c)(1) of the Workers' Compensation Act (Act) defines the term "injury" as "an injury to an employe, regardless of his [or her] previous physical condition, arising in the course of his [or her] employment and related thereto[.]" Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1). A disease that is caused by the workplace and related thereto is also compensable as an injury under Section 301(c)(1). *Pawlosky v. Workmen's Comp. Appeal Bd. (Latrobe Brewing Co.)*, 525 A.2d 1204, 1210 (Pa. 1987). Where there is no obvious causal connection between an alleged injury and a work-related cause, unequivocal medical testimony is necessary to establish that connection. *Cromie v. Workmen's Comp. Appeal Bd. (Anchor Hocking Corp.)*, 600 A.2d 677, 679 (Pa. Cmwlth. 1991). Additionally, we must view the record in a light most favorable to the prevailing party. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Employer argues that the WCJ erred in accepting Claimant's lay testimony as to the presence and effect of mold at her workplace, observing that the standard for the admission of lay opinion of a technical or scientific nature in workers' compensation proceedings provides that a witness must have sufficient experience or specialized knowledge to warrant admission of opinion evidence of a technical nature. *Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy*

4

*Prods.)*, 861 A.2d 938, 948 (Pa. 2004). In addition, "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *Id*. Accordingly, Employer maintains that Claimant's lay testimony regarding mold is analogous to the lay testimony in *Gibson* regarding asbestos, which was rejected on the ground that an untrained person could not identify such a substance without personal knowledge or specialized training. For several reasons, we reject Employer's position.

As an initial matter, we reject the notion that scientific expertise is required to recognize such a commonly occurring substance as mold. Moreover, we reiterate that the WCJ accepted Claimant's testimony that one of her assigned tasks was cleaning mold from various surfaces with a scraper and that there were numerous water-related problems in the factory. As Claimant testified, mold had been present ever since she started working as a conveyor attendant and, despite Employer painting over it, "other people were scraping it and tried to keep getting rid of it, but it [kept] coming back." (F.F. No. 21.) Clearly, the accepted evidence of record reflects that Claimant had personal knowledge and experience with mold. As the Supreme Court held: "Actual knowledge and observation on the part of the lay witness are the essential bases for the reception of the [lay] opinion." *Gibson*, 861 A.2d at 948. Accordingly, we find the present case to be easily distinguishable from one involving a substance such as asbestos.

In addition, the WCJ credited Claimant's testimony that she did not experience breathing problems or symptoms before January 2013, when she began to experience such issues at work. Notably, he found that the onset of her problems was coincidental with cleaning mold. (F.F. No. 116.) In accepting her testimony, the WCJ emphasized the fact that Claimant personally testified before him, that she had a long and admirable work history with Employer, that her testimony was

5

consistent and straightforward with regard to the development of her symptoms, and that her testimony was supported by Dr. Hertz. (*Id*.) With that, we turn to Employer's contention that Dr. Hertz's testimony did not establish the requisite causation.

In general, the WCJ determined that Dr. Hertz "testified in a logical, consistent, and straight-forward manner describing his diagnosis of . . . occupational asthma due to [Claimant's] work activities . . . ." (*Id*., No. 117.) More specifically, the WCJ observed that, in determining that there was a causal connection between Claimant's work environment and breathing problems, Dr. Hertz relied upon his examinations of Claimant, her depiction of conditions at the plant, and an October 2014 report from research industrial hygienist Dr. Jenna Armstrong on behalf of the NIOSH that was sent to Claimant's electronic chart. Below, we turn to a closer analysis of Dr. Hertz's testimony.

Dr. Hertz first examined Claimant in December 2013. Claimant relayed to him that "she believed that there was some mold contamination in and around her workplace and that she had been told to clean the mold from these areas on a regular basis." (*Id*., No. 27.) In addition, she told him that "her breathing was being aggravated by exposure to what she called black mold, the ceiling tiles and ventilation ducts in her workplace, and that she felt significantly worse in that environment and . . . that she had to leave work four times because of acute episodes of chest tightness and shortness of breath in the first few months of 2014 . . . ." (*Id*., No. 36.) In relating Claimant's physical problems to her work, Dr. Hertz's initial impression was that she had an occupational-related disease because she was getting short of breath at the plant and her respiratory complaints were worse when she worked and somewhat improved on weekends and vacation time. (*Id*., No. 34.) Further, mindful of her depiction of the plant, he expressed concern that "just denovo

6

[sic] this lady developed . . . potentially severe asthma in January, February 2013 without any prior smoking history and without any other obvious reason for it . . . ." (*Id*.) Characterizing episodes of repeated asthma as exacerbation, he noted at least one full-blown episode of respiratory failure requiring ICU admission. (*Id*., Nos. 27 and 55.)

In opining that the occupational asthma diagnosis was "related to water damage in the workplace with mold exposure[,]"[3] Dr. Hertz also considered the NIOSH report. The WCJ overruled Employer's hearsay objection to the report because Dr. Hertz testified that he customarily reviewed such documents when they concerned his patients. (*Id*., No. 48.) Especially considering Dr. Hertz's status as an expert in pulmonary medicine, we conclude that the WCJ did not err in making that evidentiary ruling. *See Kimberly Clark Corp. v. Workers' Comp. Appeal Bd. (Bullard)*, 790 A.2d 1072, 1076 (Pa. Cmwlth. 2001) (holding that when evidence is of the type customarily relied upon by experts in a particular field, experts may base their opinions on otherwise inadmissible evidence).

In any event, Dr. Hertz testified that his review of the NIOSH report indicated that several workers had complained of roof leaks, standing water, and musty odors in several areas of Employer's plant and that a team from the NIOSH had conducted a respiratory disease hazard evaluation of the facility between September 17 and 19, 2014. (F.F. No. 49.) The team's visual assessment and evaluation included speaking with administrators, personnel, and workers. The report reflected that remediation was warranted in that the team had observed "evidence of past and current water damage throughout the facility that appeared to be due to pipe leaks and leaks with damage in all roofs as well as failed window flashing and failure in the flashing and caulking in the joints between walls and

---

[3] (F.F. No. 55.)

roofs." (*Id.*, No. 50.) Accordingly, while it is true that Dr. Hertz admitted that he did not rely on any objective data or studies showing that mold was present at Employer's plant in rendering his diagnosis,[4] there is ample evidence, including both Claimant's description of the workplace and the doctor's review of the NIOSH report, for a conclusion that mold caused Claimant's breathing problems.

Finally, we find no merit to Employer's argument that the WCJ failed to render a reasoned decision pursuant to Section 422(a) of the Act, 77 P.S. § 834(a). As evident from the WCJ's 23-page decision, which included 121 findings of fact, numerous citations to evidentiary support, and pertinent conclusions of law, the WCJ rendered a decision fully explaining his rationale for granting the claim petition. Specifically, in addition to concluding that the accepted testimony was logical, consistent, and straightforward, the WCJ articulated actual objective grounds for his credibility determinations. *See U.S. Steel Mining Co. v. Workers' Comp. Appeal Bd. (Goretsky)*, 874 A2d. 711, 716 (Pa. Cmwlth. 2005) (where the WCJ concluded that the expert testimony was closely reasoned, logical, and sequential, decision was reasoned). Accordingly, Employer's position is without merit.

For the above reasons, therefore, we affirm.

_____

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[4] (April 27, 2015, Deposition of Dr. Hertz, Notes of Testimony at 29; Reproduced Record at 82a.)

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wise Foods, Inc.,                                    :
                              Petitioner             :
                                                     :
                   v.                                :       No. 1887 C.D. 2017
                                                     :
Workers' Compensation Appeal                         :
Board (Carvell),                                     :
                              Respondent             :

# **O R D E R**

AND NOW, this 15th day of November, 2018, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge